```
_____FILED  ____ENTERED
_____LODGED ___ _RECEIVED
        MAR 28 2007   DJ
            AT SEATTLE
      CLERK U.S. DISTRICT COURT
  WESTERN DISTRICT OF WASHINGTON
BY                         DEPUTY
```

IN THE WESTREN WASHINGTON DISTRICT COURT IN THE COUNTY OF KING

| | |
|---|---|
| ██ █. N ██████ (minor)<br>DOB 11/5/89 | ) CIVIL RIGHTS COMPLAINT<br>) (42 U.S.C. § 1983) |
|     Plaintiff, | ) Juvenile Court<br>) CASE NO. 05-8-00223-1 |
|     vs. | ) CASE NO. 04-8-02781-2 |
| KING COUNTY, KING COUNTY<br>JUVENILE COURT, KING PROBATION<br>OFFICE, KING COUNTY<br>PROSECUTOR'S OFFICE, SOCIETY OF<br>COUNSEL REPRESENTION ACCUSED<br>PERSONS, SETH CONANT, JAMES<br>BREEN, MICHELLE HIGA, TONY<br>PEGUERO, LISA HUGGINS, JENE<br>DUPRIS, DIANE RAYBURN | )<br>) CIVIL NO __CV7    467__RSM<br>)<br>)<br>)<br>) |||||||||||||||||||||<br>) | |||||| ||| |||||| ||||| |||| || ||||<br>) 07-CV-00467-CMP (pgs. 1-49) |
|     Defendants | ) |

## JURISDICTION

1.    Jurisdiction is proper in this court according to:  42 U.S.C. § 1983.

- 1 -

2. Plaintiff ████████, a minor child, is an individual and citizen in the State of Washington. I am presently a resident at the Echo Glen Children's Center, at 33010 99 St, Snoqualmie, Washington, 98065. My parent and family's address is The Nunnery Family at P.O. Box 463, Mukilteo, WA. 98275. I give them permission to receive all information regarding my case.

3. Defendant Seth Conant, is a citizen of Seattle Washington and was employed as a public defense attorney for Society of Counsel Representing Accused Persons, at the King County Juvenile Court at 1211 E. Alder, Seattle, Washington 98122. He was the plaintiff's appointed attorney of record.

4. Defendant James Breen is a citizen of Seattle Washington and was employed as the prosecuting attorney for the King County Juvenile Court at 1211 E. Alder, Seattle, Washington 98122 for my case.

5. Defendant Michelle Higa, is a citizen of Seattle, Washington and was employed as a probation officer for the King County Juvenile Court at 1211 E. Alder, Seattle, Washington 98122 for my case.

6. Defendant Tony Peguero is a citizen of Seattle, Washington and was employed as a probation supervisor for the King County Juvenile Court at 1211 E. Alder, Seattle, Washington 98122 .

7. Lisa Huggins is a citizen of Seattle, Washington and was employed as the diagnostic coordinator for the King County Juvenile Court at 1211 E. Alder, Seattle, Washington 98122 .

8. Jene Dupris is a citizen of Seattle, Washington and was employed as the diagnostic coordinator's supervisor for the King County Juvenile Court at 1211 E. Alder, Seattle, Washington 98122 .

9.      Diane J. Rayburn  is a citizen of Seattle, Washington and was employed as a probation officer for the King County Juvenile Court at 1211 E. Alder, Seattle, Washington 98122

## NATURE OF CASE

The plaintiff is bringing this case to the court to resolve material and legal issues regarding her adjudication and confinement at the Echo Glen Children's Center.  The circumstances are that an uncharged offense was reported to the court as the charged offense on the Presentencing Report in violation of the plaintiff's Sixth Amendment Constitutional Rights and Fourteenth Amendment Right to Due Process, and the right to discovery.

Also, the charged offense, PWI, possession of with intent should have been filed under both RCW 69.50.401 and RCW 69. 50. 407.  Possession with intent is a B level offense but it has been charged as a B+ offense under the Juvenile Act, rather then a C level offense, therefore the sentence is negatively impacted against the plaintiff.

In addition, the Juvenile Court and the Probation officer   dspite the plantiff's willingness to participate and available  in thei evalation and even though it was apparent tha the plaintiff'

## CAUSE OF ACTION

I allege that my constitutional rights, privileges or immunities have been violated and that the following facts, and attached document with exhibits A-M, form the basis for my allegation, which were filed in the King County Juvenile Court clerk's office, the Prosecutor's Office,  the Juvenile Court and with the attorney of record, Seth Conant on October 13, 2006.  The plaintiff was denied a hearing date on the calendar, per a telephone call from the note for calendar supervisor, citing the fact that neither the plaintiff nor her parent are attorneys.

1         Seth Conant, the attorney of record refused all approaches to assist in this matter. The

2 plaintiff's parent was eventually able to make contact with Mr. Connant's supervisor Marc

3 Stenchaver , going to the juvenile court and leaving him a written message. His verbal response

4 was that the charge is a B+ level and that Michelle Higa is responsible for the unproven charge

5 in the record and that the plaintiff would have to talk to the court about the inconsistency

6 reported to the Washington State Patrol.

7         In addition, I allege that my constitutional rights to due process under the Fourteenth

8 Amendment were violated when the probation officer, Diane J. Rayburn failed to provide a timely

9 court-ordered substance use evaluation, within 30 days as ordered by Judge Richard Ishihawa

10 under case number 03-8-02743-1

11

12                                                      **Injury**

13         I am injured by the fact that I am still confined at the Echo Glen's Children Center. The

14 presentencing report and the official record was never revealed to me by my attorney, Seth

15 Conant. This was material and substantial information that was relied upon by the court during

16 disposition. The uncharged offense labeled and stigmatized me for an offense that I did not

17 commit and never charged with. I continue to be wrongfully denied visits with my parent, for

18 also one year. I believe that the problem with visits started due to my parents' efforts to obtain

19 my case records which lead to the discovery of the false and uncharged offense. I discovered the

20 information about six months after the disposition and I continue to be labeled and burden

21 because of this false and misleading statement on several records by different people, including

22 other inaccurate information. It is particularly hurtful, considering that the plaintiff is African-

23 American which as a group has been stenotyped in society, in movie and other media as drugs

24 dealers.

25

## REQUEST FOR RELIEF

I believe that I am entitled to relief from the judgment in this case and that my records are

corrected, and all such other relief that the court deems appropriate. Request all other records,

information or other results connected to these cases that have not been made known to me.

I request that my name be spelled correctly: with an lower case i not a capital J.

## DECLARTION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the plaintiff in the above

action, that she has read the above complaint, and that the information contained therein is true

and correct.

Dated this 8th  day of March,  2007

_____ (Pro Se) ( filed with the
assistance of my parent, Alicia Nunnery

*Alicia Nunnery*

*Dated this 20th day of March
in support of this complaint
being filed by plaintiff.*

- 5

RECEIVED
KING COUNTY, WASHINGTON

OCT 13 2005

DEPARTMENT OF
JUDICIAL ADMINISTRATION

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR COUNTY OF KING
JUVENILE DIVISION

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>     Plaintiff,<br><br>     v.<br><br>In re ██████████ (minor)<br><br>D.O.B. 11-05-89<br><br>     Respondent. | ) CASE NO: 05-8-00223-1<br>)   COA:  55965-6-1<br>) 1.) MOTION FOR ORDER OF<br>)   DISMISSAL /RELIEF FROM<br>)   ADJUDICATION AND DISPOSITION<br>) 2.) REQUEST COURT APPOINTED<br>)   COUNSEL/ATTORNEY OF DAY<br>) 3.) NOTE FORCALENDAR<br>)   (Clerk's Action Required) |

## 1. MOTION

COMES NOW the plaintiff, ██████████████, through my parent, Alicia Nunnery, and makes this Motion to the juvenile court until an attorney of the day can be available and/or counsel is appointed, and moves this court for an Order of Dismissal. This motion is made through my parent, due to family financial hardship and I have been unable to obtain adequate legal assistance through the youth attorney Charlie Rosenberry, at JRA nor the defense Seth Conant. ██████████ is my biological parent, and she has a liberty interest in a relationship with me and I have a right to assistance from her. In <u>Pierce v. Society of Sister</u>, 268 U.S. 510 (1925), the court said, "The child is not the mere creature of the State; those who nurture him and

RECEIVED

3

King County Prosecutor
Juvenile Division

*Marc Huia*

*Marc Huai*

FILED
KING COUNTY, WASHINGTON

DEPARTMENT OF JUDICIAL ADMINISTRATION

7

1  direct his destiny have the right, coupled with the high duty; to recognize and prepare him for

2  additional obligations." Meyer v. State of Nebraska, 262 U.S. 390 (1923). [*]

3      The United States Supreme Court has a line of cases since Meyer and Pierce that

4  establishes that the Constitution protects the sanctity of the family precisely because the

5  institution of the family is deeply rooted in our Nation's history and tradition. My parents'

6  concern for me does not end due to the imposition physical custody at JRA.

7      The Juvenile Justice Act of 1977, cites as part of its intent and purpose, as equally

8  important RCW 13.40.010 (2)(l); "Encourage the parents, guardian or custodian of the juvenile

9  to actively participate in the juvenile justice process." I very strongly feel, know, and believe

10 that the best hope for me lies within myself and the continued loving and caring support and

11 positively advocate of my family. This Motion is based on RCW 69.50.407, 13.40.023507 and

12 my Constitutional Rights under the 14th Amendment, those embodied in the Sixth Amendment,

13 and the records and files herein.

14

15

16      RESPECTFULLY SUBMITTED this  10th day of October, 2006

17

18                                      Request Confirmed via -telephone

19

20

21                                      Presented by Alicia Nunnery

22                                      Parent of Defendant

23  _____

24  [*] Nunnery Family
    P. O. Box 463
25  Mukilteo, WA. 98275

- 2

# I. JURISDICTION

**RCW 13.40.450**

Chapters 13.04 and 13.40 RCW as exclusive authority for adjudication and disposition of juvenile offenders. The King County Juvenile Court has retained jurisdiction over the case.

# II. MEMORANDUM

## A. Statement of Case & Background

Over one year ago, on January 12, 2005, the petitioner was taken into custody by the Seattle Police Department and transported to the King County Youth Service Center. She was charged by information with one count of Violation of the Uniform Controlled Substances Act (VUCSA) - PWI possession with intent to deliver. A plea of *not* guilty was entered and a trial was held. The Honorable Suzanne M. Barnett found petitioner guilty in King County Juvenile Court, courtroom 3. (Exhibit A)

As the trial ended, during the setting the disposition date, the defense attorney Seth Conant made, an inappropriate and prejudicial statement regarding the disposition of the case in open court and in the present of both the judge and the prosecutor by stating, *"Are there other times on the 14th? Given that she's looking at 80 to 100 weeks, I'd rather have more time than less."* RP127 (Record of Procedures) The defense attorney, Seth Conant voiced his personal expectation of a standard range adjudication of 80 to 100 week, in opposition to the defendant's interest, while signaling the other parties as to his expectations before the disposition hearing took place. Mr. Conant statement implies an unfair trial.

A disposition hearing was held on March 25, 2005, in courtroom 3, with the Honorable Suzanne M. Barnett presiding. The punishment received was of standard range adjudication (Option A) of 80 to 100 weeks, just as all the parties had advised. The defendant was committed

to maximum-security at JRA, Juvenile Rehabilitation Administration, on March 28, 2005, which is where she still reside. At the time of this 1st commitment, she had already served 76 days in King County juvenile detention, pending trial and adjudication.

At the beginning of the disposition hearing, Judge Barnett stated that, *"I did receive quite a lot of material, and I have had a chance to review it all before today's hearing. So you can tailor your remarks accordingly, with the understanding that I have read the material, and if you need to reference it, that's fine."* RP2  One of those reports was from the juvenile probation counselor, Michelle Higa. RP 3

> The Court: Ms. Higa, why don't I go ahead and hear
> from you. I did receive your report, and if there's
> anything you'd like to add or alter at this point?
>
> Ms Higa: No, Your Honor. We are recommending standard
> range for both matters. I guess in addition, we would ask that
> her current numbers that she is being supervised on probation be
> terminated.

The Predisposition Diagnostic Report (i.g. presentence report) was prepared by King County probation per RCW 13.04.040 (4).

None of the reports the judge talked about, had been disclosed to the defendant nor did the defense attorney (Seth Conant) discuss any of them with her or her parent. Therefore, neither she nor her parent was afforded the opportunity to rebut or contradict any of the oral or written reports. The dispositional reports are deemed 'relevant and material evidence,' which the court can rely upon, at the disposition hearing. RCW 13.40.150 (1)  The parties were discouraged from being repetitive about the reports at the hearing, so the petitioner cannot be certain as to who made reports or what was said. The record shows that there were no

10

objections to these reports nor the disposition and adjudication for (PWL) possession with intent to deliver a narcotic.

An appeal was filed in the Court of Appeals, which was addressed by attorneys Dana M. Lind and Jennifer Gilman from the office of Nielsen, Broman & Koch P.L.L.C.. Meanwhile, due directly to the avocation and research by the youth's mother, Alicia Nunnery, the youth learned that the charged offense (PWL) possession with intent to deliver was misrepresented as *Sale of Narcotic/Delivery,* an uncharged offense in this case. Several documents, including the Predisposition Diagnostic Report and the (D/PROA) Diagnostic/Placement Record of Official Action, contained this false information regarding the charged offense. (Exhibits B & C)

The King County probation counselor, Michelle Higa, and her supervisor, Tony Peguero, and dated March 24, 2005, signed the seventeen (17) page Predisposition Diagnostic Report sent to courtroom 3 on page 15. Their report recommended 80 to 100 weeks at (JRA) Juvenile Rehabilitation Administration, and ended with the inclusion of a three page ***Confidential Psychological Evaluation*** by a licensed psychologist, Gerald Fleischer PH.D, from the First Hill Psychological Services. *VUCSA/Narcotic Delivery,* was misrepresented as the adjudicated offense on page sixteen. (!6) of the report, and was marked **"CONFIDENTIAL."** (Exhibit B)

The (D/PROA) Diagnostic/Placement Record of Official Action misrepresented the charged offense, (PWI) possession with intent to deliver on the very first page of its report, as VUCSA/Delivery of Cocaine. Again, a King County employee, Lisa Higgins's name is listed under the section, CONTACTS AND SOURCES OF INFORMATION. The (D/PROA) Diagnostic/Placement Record of Official Action was signed by Lisa Higgins, the diagnostic Coordinator, and dated March 28th, 2005 on Page 4 of the document. She notes that her supervisor, Gene Dupuis was "Not available" to review the report. (Exhibit C)

- 5 -

The SENTENCING WORKSHEET also misrepresents the official charged offense as **(SALENARC,)** Sale of Narcotic, in bold type. Under #16 JRA OFFENSE CODE. Under #17 ANTICIPATORY TYPE, the box COMPLETED is selected from, attempted, conspiracy or solicitation. Under #18, JRA OFFENSE CATEGORY, **B+** appears in bold type. Lisa Higgins, signs the sentencing worksheet. Lisa Higgins's phone number is listed as 206-205-9433. (Exhibit D)

An additional document, JUVENILE REHABILITATION ADMINISTRATION *INTAKE NOTIFICATION list Lisa Higgins' name in the box entitled, NAME OR CALLER.* The same phone number from the sentencing worksheet is listed. The box entitled COMMITTING OFFENSE-OFFENSE BEHAVIOR misrepresents the official charged offense again, as VUCSA /DELIVERY. (Exhibit E)

Another document, entitled SUICIDE PRECAUTION LEVEL: 0 DATED: 3/29/2005, continued the pattern of falsely reporting the charged offense as VUSCA/Delivery. (Exhibit F)

In December of 2005, the petitioner's mother attempted to address the issue of the misrepresented and uncharged offense with the two King County employees that signed the written reports, probation counselor, Michelle Higa and Lisa Higgins, the Diagnostic Coordinator. Michelle Higa presented herself as indifferent and uncooperative. Lisa Higgins admitted that she worked for King County, but could not discuss the matter and referred the parent to her supervisor, Gene Dupuis. Eventually, the parent was successful in contacting Mr. Dupuris and discussed her concerns about the charges not being the same. Mr. Dupuris scheduled a meeting with the parent, and then canceled the meeting at the last minute. (Exhibit G)

12.

On January 31 a Petition for Writ of Habeas Corpus was filed in the Superior Court, in the courtroom of the Chief Judge, The Honorable Judge Lum, under case numbers 05-8-00223-1 and 05-2-30181-3. The petition was also filed with the Clerk's office in Juvenile Court and served upon all parties. A copy of the petition was served upon JRA as well, due to the imposition of physical custody. The petition was transferred to the Court of Appeals, where the document was termed (PRP) Petition of Personal Restraint.

Surprisingly, the responsibility of the false and misleading records, that concealed the fact that the original charged offense had been substituted with an uncharged offense that was more serious and carried a higher penalty, was shifted to (JRA) Juvenile Rehabilitation Administration or Echo Glen Children's Center, which is under the direction of Dr. Nehemiah Mead, although the King County juvenile court is where the disposition and adjudication took place. Gene Dupuis, the King County Diagnostic supervisor took the matter to another level when he signed a faxed letter that was presented to the Court of Appeals stating that, ***"It has come to my attention that the report to the court and ROA (Record of Official Action) under legal number 05-8-00223-1 notes the offense as a VUCSA/Delivery of Cocaine***. **This should have read "VUCSA/Possession with intent to deliver Cocaine."** (Exhibit H) The misrepresentation of the charged offense was deemed a harmless mistake, thus dismissal of the petition.

However, both the Predisposition Diagnostic Report and the (D/PROA) Diagnostic/Placement Record of Official Action clearly demonstrate, through the written information, and signatures that the reports were produced by King County employees Michelle Higa and Lisa Higgins, and signed by at least one of their supervisors. The record supports that at least the Predisposition Diagnostic Report was **confidentially** presented and relied upon by

-7-

*13*

the Honorable Suzanne M. Barnett in courtroom 3 for the disposition and adjudication. The personal restraint petition was filed in part to *clarify the official charge and resolve some of the confusion* for the defendant as to the charge and disposition.

In addition, a telephone call with the parent of the petitioner to the JRA director in Olympia in Washington, Mr. Griffin, and talking with Patti Berntsen the records person at Echo Glen Children's Center verified that the forms reflecting the false charge, are provided to King County by JRA, but that King County employees fill them out per their contract. Also, Larry Bosi stated in a phone call that he had not received a fax or letter from Mr. Dupuis, regarding any changes. Mr. Bosi stated, "I do not have the legal file. That stays with the child. So, if she is there, you would have to check with them. I am not at Echo Glen." Mr. Dupuis's letter, is addressed to; (Exhibit H)

> To: Echo Glen Children's Center
> JRA Region 4: Attention Larry Bosi

On or about March 14th, 2006 the defendant discovered that the State's attorney, Deputy Prosecuting Attorney Michael Paul Mohandeson had made a motion to the Court of Appeals, in November 2005, to Supplement the Record On Appeal, with the probation counselor, Michelle Higa's Predisposition Report. Prosecutor Michael Mohandeson attached the Predisposition Report to his motion. He states in section 3 of his motion, "*In deciding not to grant the CDDA the sentencing judge reviewed and considered the probation counselor's report. 2RP 3. A copy of the report itself was never filed or made an exhibit in this case. It should have been made part of the record and is necessary for full appellate review of this particular issue raised by the defendant.*" In section 4, Prosecutor Michael Paul Mohandeson states that, "*Defense counsel, per telephone conversation, has no objection to this motion and no hearing is required before*

14

*this court."* The Appeals Court granted the state's request to supplement the record on appeal, however in December 2005 the state requested that its motion to supplement the record be withdrawn. The motion was granted. (Exhibit I)

## B. Argument

The defendant was charged under RCW 60.50.401 (1) (2) (a) which is prima facie that possession with intent to deliver a controlled substance or narcotic is a **"B"** offence, under the Uniform Controlled substances Act. RCW 69.50.401 (1) (2) (a) reads in part:

Prohibited acts: A- Penalities (1) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or posses with intent to manufacture or deliver, a controlled substance.

(2) Any person who violates this section with respect to: (a) A controlled substance classified in Schedule I or II which is a narcotic drug or flunitrazepan classified in Schedule IV, is guilty of a **CLASS B FELONY** and upon conviction may be imprisoned for not more than ten years, or (i) fined not more than twenty-five thousand dollars if the crime involved less than two kilograms of the drug, or both such imprisonment and fine;

The King County Senior Deputy Prosecuting Attorney, Ann Summers have insisted that, both Sale of Narcotics/Delivery and Possession with intent to deliver "have a "B+" juvenile disposition offense category pursuant to RCW 13.40.035." Unfortunately, this statement is simply not true and is inconsistent with the laws of the State of Washington under the Juvenile Justice Act of 1977 at RCW 13.40.0357. Although, sale of narcotics is set forth under the same statute as Possession with intent to deliver, ***Only one** of these offenses has a **"B+"** juvenile disposition offense category pursuant to **RCW 13.40.0357** under the title **Drugs**.* That B+ offense is **(Sale of Narcotic/Delivery)** the same ***uncharged offense* misrepresented *as the***

-9

15

*charged offense on the Predisposition Diagnostic Report and the (D/PROA)*

*Diagnostic/Placement Record of Official Action Reports,* that were **CONFIDENTIALLY** sent to the Honorable Suzanne M. Barnett, in courtroom 3 for the  disposition and adjudication hearing.  (Exhibit J)  (i.g.)

> 13.40.351      Title 13 RCW: Juvenile Courts and Juvenile Offenders
>
>   B+      Violation of Uniform Controlled Substances Act -
>
> Narcotic, Methamphetamine, **OR** flunitrazepam **SALE**   B+

The petitioner was found guilty of PWI/Possession with intent to deliver, which is not found under the heading **Drugs** at RCW 13.40.0357 where the Description and Offense Category is listed for juvenile offenses.  Possession with intent to deliver is a non-VUCSA anticipatory offense (attempts, and conspiracies) involving violations of the Uniform Controlled Substances Act.  I t is not considered a drug offense under RCW 9.94A.030 (21) (a) as asserted by the state prosecutors.  The Uniform Controlled Substances Act includes conspiracy and attempts as anticipatory offenses and both offense are charged under RCW 69.50.407.  In re Hopkins, 137 Wn. 2d 897, 901, 976 P.2d 616 (1999); State v. Mendoza, 63 Wn. App. 373, 377, 819 P. 2d 387 (1991)   Also, see State v. Hebert, 67 Wn. App. 836, 837-38, 841 P. 2d 54 (1992) Unlike Angela Hebert, the defendant was not afforded the opportunity to argued against her excessive standard range punishment at her disposition hearing.

The Washington State Sentencing Guidelines Commission states that, Anticipatory offenses (including attempts, conspiracies) to commit a drug offense are typically sentenced as "unranked" offenses.  Attempt or conspiracy to commit a drug offense is specifically addressed in RCW 69.50.407 which provides that such offenses are punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense.  RCW

69.50.401 (2) (a) categorizes Possession with to deliver as a **B felony.** The disposition offense category would be found under **"Other Offenses"** at RCW 13.40.0357 on the Juvenile Offender sentencing standards (Effective until July1, 2007)  "Other Offense Equivalent to an Adult Class B Felony" has a C Offense Category as a non-VUCSA anticipatory offense. Page 78 of the Sentencing Guidelines Commission's Juvenile Dispositional Manual for 2005 shows the standard range juvenile sentencing grid (Option A).  A youth with a three (3) as a prior adjudication score and a C offense category should have received a stand range local sanction, not 80 to 100 weeks at (JRA) Juvenile Rehabilitation Administration.  (Exhibits K)

The Sentencing Commission states that most juvenile offense are listed under RCW 13.40.0357, but when they are not listed in that section of the code may be determined by converting adult offense classifications into juvenile offense categories.  This process is demonstrated under other offense and on page 5 of the 2005 Sentencing Guidelines Commissions Juvenile Disposition Manual. (Exhibit L)

Possession with intent to deliver does not have a B+ offense category as the King County Deputy Prosecuting Attorney Thomas James Breen and Senior Deputy Prosecuting Attorney, Ann Summers are demanding it has, at the juvenile court level. Astonishingly, the offense category or classification was reported to the Washington State Patrol as "UNKNOWN," not as a B+ category, as the state's attorneys declared in court, on more than one occasion.  The Washington State Patrol reports King County Superior as the contributor or the responsible agency making the report under case number 05-8-00223-1.  The charge is simply listed as controlled substance under 69.50.

- 11

1
2
3

Shockingly, the Washington State Patrol states the disposition of the case as 100 weeks in "JUV DETENTION", not as 80 to 100 weeks and not at (JRA) Juvenile Rehabilitation Administration. (Exhibit M)

4
5
6
7
8
9
10
11

RCW 13.40.070 (4) states that, "information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall be signed by the prosecuting attorney and conform to chapter 10.37 RCW. King County Deputy Prosecuting Attorney Thomas James Breen gave that **exact or definite statement** in his information against the juvenile defendant. The prosecutor cannot now, change that statement, at the expense of defendant during the sentencing phase of the case just because he knowingly and secretly supported a phony record that reflected a more serious uncharged offense.

12
13
14
15
16
17
18
19
20

In Re Gault, 387 U.S. 1 (1967), the United States supreme Court said, "Due Process requires notice of the charges and a hearing." "The Supreme Court said that juvenile defendants must have notice of the charges against them, notice of their right to have an attorney, the right to confront and cross examine witnesses against them, and the right not to testify against themselves." The due process clause also requires proof beyond a reasonable doubt. In re Winship, 397 U.S. 358 (1970) The defendant was not afforded any of these rights regarding the misrepresented charge, Sale of Narcotic/Delivery, yet the disposition hearing and adjudication of 80 to 100 weeks at the Echo Glen Children's Center (JRA) was based on this uncharged offense.

21
22
23
24
25

Additionally, In Re Gault, 387 U.S. 1 (1967), the Supreme Court said, "The state cannot deprive a person, even a juvenile delinquent, of liberty without a fair trial. Without such notice and an attorney to help him, Gault could not defend himself properly. Without the right to confront and cross-examine witness, Gault could not test whether Mrs. Cook had told the truth. Without the right against self-incrimination, Gault may have been pressured to admit to a

18

crime he did not commit." Justice Fortas said that when a juvenile faces detention, he must have these rights and protections during his hearing.

Also, Article 1, section 22 of the Washington Constitution gives an accused the right to be provided with notice of all charged crimes. State v. Schaffer, 120 Wn. 2d 616, 619, 845 P. 2d 281 (1993)  Surely, the Washington State Constitution would not support sentencing based on an uncharged offense. In fact, the Washington criminal procedures require that you be charged before you can be punished. In furtherance of this provision, the Supreme Court has adopted a rule limiting the State's ability to amend information once it rests its case 'unless the amendment is to a lesser degree of the same charge or a lesser included offense.' State v. Pelkey, 109 Wn. 2d 484, 491, 745 P. 2d 845 (1987)  In this case sentencing based on a higher uncharged offense (Sale of Narcotic/Delivery) without notice amounts to improperly amending the original charge (possession with intent to deliver) to a higher degree, via sentencing imposed (which enhanced the sentence) in violation of the accused Due Process Rights under the 14th Amendment to the United States Constitution.

The Juvenile Justice Act of 1977 also, requires that a juvenile be charged before he/she can be punished. The law affords the accused the presumption of innocence, until proved guilty in a court of law, beyond a reasonable doubt. Secret and false information in the Presentence Report and Official Record of Action, about the petitioner's record and character, that materially and substantially impacted the outcome of the case does not meet the constitutional command that no person shall be deprived of their liberty without due process of law. A complete injustice occurs when even one essential element of the offense is missing, especially when one is secretly accused, then sentenced without ever being charged. **RCW 13.40.0351 Equal application of guidelines and standards.** The sentencing guidelines and prosecuting standards

*19*

1    apply equally to juvenile offenders in all parts of the state, without discrimination as to any

2    element that does not relate to the crime or the previous record of the offender.

3        The Washington State Court has held that an error infringing upon a defendant's

4    constitutional rights is presumed prejudicial and that the State has the burden of proving the

5    error was harmless beyond a reasonable doubt. State v. Stephens, 93 Wn. 2d 186, 191, 607 P.

6    2d 304 (1980); State v. Burri, 87 Wn. 2d 175, 182, 550 P. 2d 507 (1976); State v. Claborn, 95

7    Wn. 2d 629, 628 P. 2d 467 (1981) In State v. Pam, 98 Wn. 2d 748, at 754 (quoting State v.

8    Wanrow, 88 Wn. 2d 221, 237, 559 P. 2d 548 (1977) The court said that a "harmless error" is

9    one which is """TRIVIAL, or FORMAL, or MERELY ACADEMIC, and was not prejudicial to

10   the substantial rights of the party assigning it, and IN NO WAY AFFECTED THE FINAL

11   OUTCOME OF THE CASE."""        In this case, the juvenile defendant was adjudicated or

12   sentenced on an uncharged offense where confinement of 80 to 100 weeks was imposed instead

13   of (LS) local Sanctions for the charged offense, possession with intent to deliver, as required

14   under the Juvenile Justice Act of 1977. The sentence was imposed in complete disregard for the

15   youth's Constitutional Right to Due Process under the laws of the State of Washington and of the

16   United States Constitution.

17       Although the youth was officially charged with VUCSA/possession with intent to deliver,

18   material and relevant records (Predisposition Report and Record of Official Action and other

19   sentencing documents) which were viewed and relied upon for adjudication or sentencing in

20   accordance with RCW 13.40.150 (1) misrepresented the officially charged and adjudicated

21   offense as Sale of Narcotic/Delivery. The records were then concealed from the juvenile

22   defendant, while they were simultaneously being used to facilitate a false sentence. This process

23   imposed an enhanced and illegal penalty for the officially charged offense, VUCSA/possession

24   with intent to deliver. The State cannot prove that a standard range sentence of 80 to 100 weeks

25   at (JRA) Juvenile Rehabilitation Administration is the appropriate disposition for the offense of

- 14

20

VUCSA/Possession with intent to deliver under the Juvenile Justice Act. The case should be dismissed and the record permanently removed.

Furthermore, in <u>Gardner v. Florida,</u> 430 U.S., 349, 97 S. Ct. 1197, 51L. Ed. 393 (1977) quoting <u>Williams v. New York</u>, 337 U. S. 241, 69 S. Ct. 1079, 93 L. Ed. 2d 1337 , the United States Supreme Court ruled that the, " Florida Supreme Court affirmed the death sentence without expressly discussing petitioner's contention that the sentencing court had erred in considering the Presenence Report, including the confidential portion, in deciding to impose the death penalty." The judgment was vacated. Pp. 355-364. The same principal applies in this case where the court relied upon false reports which the defendant had no opportunity to explain or deny, and the defense attorney made no objection to the judge imposing 80 to 100 weeks as a disposition, on an uncharged offense as advised by the prosecutor and probation counselor. Also, harsh and untrue statements regarding the youth's character as well as her family, some personal, were made.

The court ruled that in light of Constitutional developments *both the trial and the sentencing process must satisfy due process.* The Supreme Court of the United States said the State can not offer justification such as, (i) an assurance of confidentiality is necessary to enable investigators to obtain relevant but sensitive disclosures about a defendant's background or character;  (ii)full disclosure of a Presentence Report will unnecessarily delay the proceeding; (iii) such full disclosure, which often includes psychiatric and psychological evaluations, will occasionally disrupt the rehabilitation process; and (iv) trial judges can be trusted to exercise their sentencing discretion in a responsible manner, even though their decisions may be based on secret information. Pp 357-360. None of these justifications has been offered in this case, because the entire record was concealed from the defendant, denying the opportunity to deny or

- 15

explain. The court went on to explain that even if these justifications were permissible upon finding of good cause to withhold a portion of a Presentence Report from the defendant, "nevertheless the full report must be made a part of the record to be reviewed on appeal."

The State's Deputy Prosecuting Attorney Michael Mohandeson was granted permission through a Motion to Supplement the record with the Predisposition Report on Appeal. Later he made a Motion to withdraw the motion. His motion to withdraw his previous motion to supplement the record with the Predisposition Report was, also granted. Subsequently the Predisposition Report was not made a part of the record. (Exhibit   It was approximately three months later when the defendant discovered this information, although the defense attorney had given her approval for its supplementation. The Appeals Court's exposure to errorous information of the uncharged offense was in violation of the youth's rights to confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment under the Constitution and jeopardized her right to a fair appeal with an impartial fact finder. Dickson v. Sullivan, 849 F.2d 403, 406 (C.A. 9) Or. (9th Cir. 1988). The United States Court continued to say in Gardner v. Flordia, at P. 362  that the "proper disposition of the case was to vacate the sentence," rather then merely go back and have the report made part of the record, since the "procedure could not fully correct the error."

## C. Relief Requested

This court should dismiss this case and vacate the imposition of confinement. The youth has suffered actual and substantial prejudice due to being charged under the wrong statute. The sentence does not support the charge. In addition, the petitioner was denied Due Process of law when 80 to 100 weeks was imposed for an uncharged offense, which she had no opportunity to deny or explain, because knowledge of an uncharged offense was concealed. In Gross v. State of

1  Illinois, 312 F. 2d 257 (1963) the said that "State Judges, as well as federal, have the

2  responsibility to respect and protect persons from violations of federal constitutional rights.  The

3  misconduct the State Prosecutors and the King County Probation department, has caused actual

4  and substantial prejudice, and the youth has been denied fundamental fairness, under the 14th

5  Amendment to the United States Constitution.  The disparity in the application of the sentencing

6  laws under the Juvenile Justice Act of 1977 has had injurious results in that the youth is still

7  committed to the Echo Glen Children's Center.

8      The Supreme Court recognized in In re Gault, 387 U.S. 1 (1967) that even though a

9  juvenile case is not a criminal case, sending a juvenile to a detention center takes away his liberty

10  and freedom.  "Instead of mother and father and sisters and brothers and friends and classmates,

11  his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him

12  for anything from waywardness to rape and homicide."  As far back as 1886, In Yick Wo v.

13  Hopkins, 118 U.S. 356, (1886) the Supreme Court said,  "law and court procedures that are "fair

14  on their faces" but administered "with an evil eye or a heavy  hand" is discriminatory and

15  violates the equal protection clause of the Fourteenth Amendment".  The Supreme Court also

16  said, "Judges must maintain a high standard of judicial performance with particular emphasis

17  upon conducting litigation with scrupulous fairness and impartiality."  28 USCA ξ 2411; Pfizer

18  V. Lord, 456 F. 2d 532; cert denied 92 S. Ct 2411; U.S. Ct. App MN, (1972).

19      To insist upon maintaining an illegally imposed sentence based on a similar uncharged

20  offense that carries a higher penalty and has  never been charged or proven beyond a reasonable

21  doubt in a court of law, as the State's attorneys are demanding, is unreasonable.  According to

22  one leading attorney and author, it is to ignore what most in their profession would not ignore,

23  including most judges sitting on a courtroom bench; The Common Law Maxims, the "self-

24  evident" truths that establish Justice.  Specifically to this case is The Common Law Maxim, "**Λ**

25  **thing similar is not exactly the same."**

- 17

# Exhibit  A

24

FILED

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY
JUVENILE DEPARTMENT

| THE STATE OF WASHINGTON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | No.  05-8-00223-1 |
| v. | ) | INFORMATION |
| JAZQUEENA NUNNERY, | ) | |
| B.D. 11-05-89, | ) | |
| Respondent. | ) | |

I, Norm Maleng, Prosecuting Attorney for King County in the name and by the authority of the State of Washington, do accuse JAZQUEENA NUNNERY of the crime of **Violation of the Uniform Controlled Substances Act**, committed as follows:

That the respondent, JAZQUEENA NUNNERY, in King County, Washington, on or about 12 January 2005, unlawfully and feloniously did possess with intent to manufacture or deliver rock cocaine, a controlled substance and a narcotic drug, and did know it was a controlled substance;

Contrary to RCW 69.50.401(1),(2)(a), and against the peace and dignity of the State of Washington.

NORM MALENG
Prosecuting Attorney

By: _____
C. N. Coby Cohen, WSBA #30034
Deputy Prosecuting Attorney (R)

wp1

**Norm Maleng**
Prosecuting Attorney
Juvenile Court
1211 E. Alder
Seattle, Washington 98122
(206) 296-9025, FAX 296-8869

INFORMATION- 1

25

# FILED

KING COUNTY, WASHINGTON

FEB 2 8 2005

SUPERIOR COURT CLERK
BY MAUREEN ANN BELL
DEPUTY

**SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR KING COUNTY JUVENILE DEPARTMENT**

STATE OF WASHINGTON

⬛⬛⬛⬛⬛
Plaintiff                          )
)
⬛⬛⬛⬛⬛⬛⬛                  )   NO. 05800223 1
)        ORDER ON FACT-FINDING (Trial)
)
Respondent                   )
_____             )
11/5/89                       )
DOB

## I. HEARING

1.1 An information was filed with the court alleging that the above named respondent is a juvenile offender.

1.2 At arraignment, the respondent pled not guilty to the offense(s) of : Count 1 Violation of uniform Controlled Substance Act (possession of cocaine with intent

1.3 Information amended in open court alleging: _____ del

1.4 A hearing was held on the issue of whether the respondent committed the offense(s) as charged.

1.5 Persons appearing at the hearing: Deputy Prosecuting Attorney Brien
Juvenile Probation Counselor Hija , ( ) Respondent, Attorney Conant
( ) Parent(s), Other: _____
1.5 Testimony was taken from: (See Clerk's Minutes)

## II. FINDINGS

2.1 Based upon the information and testimony heard the court finds that:

(✓) The following allegations in the information have been proven: all of them

( ) The following allegations in the information have not been proven: _____

## III. DECISION

3.1 The court finds the respondent:

(✓) Guilty of the offense(s) of: Violation of the Uniform Controlled Substances

( ) Not guilty of the offense(s) of: _____

## IV. ORDER

4.1 It is ordered that a disposition hearing shall be held on March 8, 2005 at 830 am/pm in Court 3 for 1/2 hour
(✓) Respondent shall be detained until further order of the court.
( ) Likely failure to appear   (✓) Danger to the community  evidence of testimonal act
( ) Information dismissed with/without prejudice. exclude
(✓) Other: Mtion to suppress pursuant to 3.5 motion
is unlawful granted.

_____
2-28-05
DATE

JUDGE/COMMISSIONER BARNETT
Court 3                                    HFD

2 10

NO. _002231_

## III. ORDER

3.1  DISPOSITION ORDER

( ) Local Sanctions: 0-12 months supervision; 0-150 hours community service; $0-$500.00 fine; 0-30 days confinement.
( ) Chemical Dependency Disposition Alternative
( ) Special Sexual offender Disposition Alternative
    ( ) Local Sanctions  ( ) Commitment
(X) Commitment
(X) Manifest Injustice: a disposition within the standard range for this offense would effectuate a manifest injustice.  *(downward is — denied)*
( ) Option B
( ) Mental Health Disposition Alternative

## COMMUNITY SUPERVISION:

Consecutive to: _____

Count _____     Count _____     Count _____            Total Months

_____ months     _____ months     _____ months            _____

Community Service

_____ hours     _____ hours     _____ hours            Rate of _____
hours per month
first due ___ ____

    ( ) For _____ hours of counseling, credit is given for _____ hours of community service.

    ( ) Credit is given for _____ days served, _____ hours remain.

Confinement

Consecutive to: _____

_____ days     _____ days     _____ days            To commence on or before ___ ____

( ) Credit is given for _____ days served     ( ) Secure detention     ( ) Work Crew

( ) To be served on weekends     ( ) Passes authorized     ( ) To be served at JRA

( ) Respondent is released to: _____

Respondent shall be referred to Alternatives to Secure Detention unless secure detention is specifically ordered.

## ALL COUNTS WITHIN THIS NUMBER SHALL RUN CONSECUTIVELY

(Revised 7/03)                                                        ORD  p 2 of 6

27

NO. 002231

RESPONDENT SHALL ABIDE BY THE FOLLOWING TERMS AS DIRECTED BY THE JUVENILE PROBATION COUNSELOR.

( ) Counseling, which may include anger management.

( ) Drug/alcohol information/evaluation to be completed on or before _____.

( ) Neither use nor possess non-prescribed drugs and/or alcohol. Undergo random urinalysis as directed by JPC.

( ) Neither use nor possess any weapons.

( ) Reside in a JPC approved residence and abide by all home rules, including curfew of _____ pm Sunday through Thursday, and _____pm Friday and Saturday, or as imposed by JPC/Parents.

( ) Have no contact, directly or indirectly, with _____

_____

( ) Respondent shall not drive any vehicle without a valid driver's license.

( ) JPC has authority to terminate supervision upon compliance with all conditions of community supervision.

( ) Other: _____

_____

**ADDITIONAL CONDITIONS OF SUPERVISION**: That while on community supervision the juvenile offender shall be under the charge of a juvenile probation counselor and comply with the following conditions: (1) must have parent/guardian's permission regarding whereabouts, hours, and activities (2) must report any change in residence, school, and work status to juvenile probation counselor. (Obtain permission from juvenile probation counselor before changing residence) (3) must have juvenile probation counselor's permission for out-of-state travel (4) must keep all appointments with juvenile probation counselor (5) must enroll in and maintain regular school attendance/GED program with no unexcused absence, tardiness, suspension, expulsion, behavioral referral, and make best efforts to achieve passing grades and (6) shall commit no new probable cause offenses. Must further comply with all conditions as set forth in this order.

( ) Jurisdiction is extended to _____ for purposes of restitution/VPA/community supervision.

( ) Jurisdiction is transferred to _____ County.

( ) _____ retains jurisdiction.

002231

**(X) COMMITMENT** *Juvenile Rehabilitation Facility*

( ) Consecutive to: _____

**(X)** Respondent is committed to the Juvenile Rehabilitation Administration for:

Count I _____ **80–100** _____ weeks

Count II _____ weeks

Count III _____ weeks

( ) Commitment is suspended.

    ( ) Respondent shall comply with all conditions of Option B as set forth in order of supervision.

    ( ) Respondent shall comply with all conditions of SSODA (Special Sexual Offender Disposition Alternative), as set forth in appendix A.
    ( ) There shall be a hearing _____ for termination of the SSODA.

    ( ) Respondent shall comply with all conditions of CDDA (Chemical Dependency Disposition Alternative), as set forth in appendix B.
    ( ) There shall be a review of the treatment plan on _____ at _____ am/pm in Court _____.

    ( ) Respondent shall comply with all conditions of MHDA (Mental Health Disposition Alternative), as set forth in appendix C.
    ( ) There shall be a review of the treatment plan on _____ at _____ am/pm in Court _____.

    **(X)** Credit is given for _____ **75** _____ days served.

The Department of Social and Health Services, Juvenile Rehabilitation Administration shall have authority to consent to medical, psychological, psychiatric, and dental care which may be deemed necessary by attending physicians, including such immunization as required of students in the public schools.

**ALL COUNTS SHALL RUN CONSECUTIVELY**

(Revised 7/03)

ORD
Page 4 of 6

NO. 002231

## FINANCIAL OBLIGATIONS

( ) Restitution hearing is set for _____ at _____ am/pm in Court _____.
    ( ) Respondent's presence is waived.

  ( ) Fine is ordered in the amount of $ _____, due by _____.

  (X) The Victim Penalty Assessment is ordered in the amount of $100.00/$75.00.

  ( ) Restitution hearing shall be set by the state and heard within _____ days.
    ( ) Respondent's presence is waived.

  (X) Financial obligations shall be paid at 50% of earnings while respondent is at JRA.
    Payment of $ __10·00__ shall be paid per month commencing 30 days from
    release from institution.

  (X) Trust account fees are waived.

RESTITUTION in the amount of $ _____ shall be disbursed as follows:

| Count | Amount | Victim | |
|-------|--------|--------|---|
| _____ | _____ | _____ | , ( ) see attached addendum |
| _____ | _____ | _____ | , ( ) see attached addendum |
| _____ | _____ | _____ | , ( ) see attached addendum |

Co-respondents:

| | | |
|---|---|---|
| _____ | _____ | # _____ |
| _____ | _____ | # _____ |
| _____ | _____ | # _____ |

Total financial obligation, excluding Clerk's fees, is $ _100_00_ , to be paid at the rate of $ _50%_of_JRA_ per month.
First payment is due _consecutive_ to _04804 4997_

**ALL PAYMENTS ORDERED ABOVE ARE PAYABLE THROUGH THE REGISTRY OF THE COURT.
THESE SHALL BE MADE BY CASH OR MONEY ORDER TO: KING COUNTY CLERK'S OFFICE
1211 E. ALDER, SEATTLE, WASHINGTON 98122.**

(Revised 12/00)

ORD
Page 5 of 6

30

NO. 002231

4.1 NOTIFICATION
(Required for respondent convicted of certain offenses as set forth in RCW 13.04.155) the principal of respondent's school shall be notified of the disposition of this case.

(X) School Notification          School: _____

                                 School District: _____

(X) The Department of Licensing shall be notified of this conviction.

5.1 The following counts are here by dismissed: _____.

That while detained, authorization is granted to provide necessary medical and dental examination and treatment as professionally prescribed.

NOTICE OF FEES
All payments ordered above are payable through the registry of the Court. A cost of $10.00 shall be collected in addition to each fee, penalty, fine or cost collected by Juvenile Court. (There is no cost on payments under $25.00).

Parents were present in court for this hearing. This order shall serve as official notice of the disposition.

( ) WARRANT IS QUASHED/SERVED.

This order shall remain in full force and effect until further order of the court or until the same is revoked, modified, or changed, or terminated by an order of the court or by law.

3/25/05
DATE

JUDGE/COMMISSIONER
SUZANNE M. BARNETT
COMMISSIONER

FINGERPRINT(S)

I, _____
Clerk of this court, certify that the above is a true Copy of the Order of Disposition in this action on record in my office.

Dated: _____          Dated: _____

Fingerprints of: _____
Attested by:
            Barbara Miner                          Barbara Miner
            CLERK                                  CLERK

By: _____
            Deputy Clerk #34574
Deputy Prosecuting Attorney                        Deputy Clerk

                                                   Respondent
_____                                    _____
Juvenile Probation Counselor                       Lawyer for Respondent

(Revised 12/00)                                    ORD
                                                   Page 6 of 6

31

ORIGINAL LEGAL FILE

# Exhibit  B



Washington State
DEPARTMENT OF
SOCIAL & HEALTH
SERVICES

## Juvenile Rehabilitation Administration
# Predisposition Diagnostic Report

| COUNTY   KING | DATE   3/25/05   JCN<br>LEGAL # 05-8-00223-1   201167<br>#04-8-02781-2 |
|---|---|
| YOUTH'S NAME | BIRTHDATE   AGE<br>11/5/89   15.4 |
| JUVIS NUMBER<br>697013 | SOCIAL SECURITY NUMBER<br>UNKNOWN |
| ETHNICITY<br>AFRICAN AMERICAN | UNITED STATES CITIZEN X YES o NO<br>CITIZENSHIP:_____ |
| PRIMARY LANGUAGE<br>ENGLISH   X YES  oNO<br>OTHER:_____ | TRIBAL AFFILIATION o YES X NO<br>TRIBE(S)_____ |

## SOURCES OF CONTACT AND INFORMATION

The Juvenile Probation Counselor, Michelle Higa had the following contacts in gathering information regarding ▇▇▇▇▇▇ current disposition. Information from previous court reports (modifications and dispositions) from JPC Diane Rayburn, DeDe Gartrell, and Bill Boddick are also included. Also included is information provided by detention staff regarding Jazqueena's behavior while in custody, psychological evaluation by Dr. Gerald Fleisher, progress report summery by MST counselor David Knopes, and an email excerpt by Judge Laura Inveen.

An in person interview with the respondent ▇▇▇▇▇▇▇▇▇ was attempted on 3/4/05 and 3/16/05. However, ▇▇▇▇▇▇ refuses to speak with her assigned JPC and an interview was not completed.

An in person interview with Ms. Nunnery was completed on 3/23/05 at 2:30 PM. This JPC has made efforts to obtain a face to face interview with ▇▇▇▇▇▇ parent, Ms. Alicia Nunnery to gather family information. On 3/3/05, this JPC spoke with Ms. Nunnery and attempted to schedule an office appointment. Mother indicated that she wanted a new JPC and did not wish to speak with this JPC at this time. Another contact was attempted on 3/3/05 and 3/9/05 and a message was left on mother's home phone. On 3/17/05, an appointment letter was sent to the residence scheduling an office appointment for 3/22/05 at 9:00 AM. Ms. Nunnery failed to attend the appointment and this JPC received no response from the mother.

## LEGAL INFORMATION

**Current Offense(s)**
**Legal number**: 05-8-00223-1
**Offense:** Violation of the Uniform Controlled Substances Act (B+)
**Offense Date:** 1/12/05

On 2/28/05, the respondent was found guilty of unlawfully and feloniously possessing with intent to manufacture or deliver rock cocaine, a controlled substance and a narcotic drug, and did know it was a controlled substance.

### Seattle Police Officer Tom Burns reports:

On 1/12/05 at about 1131 hours I was working with my partner Officer Jokela on SPD bicycles in full uniform when the following occurred. We were riding westbound on the south side of the street when I observed a number of younger black juveniles in the bus island with a known white user, ▇▇▇▇▇▇ standing next to them. Officer Jokela observed ▇▇▇▇▇▇▇▇▇ shaking a single cigarette holder and observed some white items come out into her left hand. Nunnery looked up after a few pieces dropped out of the single cigarette holder and looked directly at me as I approached. ▇▇▇▇▇▇ put the single cigarette holder into her left hand and tightly clenched her left hand into a fist. I took hold of ▇▇▇▇▇▇▇ left hand, as I believed she had rock cocaine in her hand. ▇▇▇▇▇▇ opened her hand at my request and I recovered two pieces of suspected rock cocaine that were individually wrapped and the single cigarette holder, which upon further inspection I could see additional suspected rock cocaine inside.

I then spoke with ▇▇▇▇▇▇ about her involvement in drug dealing. Risch's name was run as he openly admitted he was not waiting for a bus and was obviously with ▇▇▇▇▇▇ and the others. An outstanding warrant came back on ▇▇▇▇ and he was placed under arrest. I spoke with ▇▇▇▇▇▇ and pointed out that it was obvious that Risch was waiting to get dope from her and how disappointing it was to see her downtown selling drugs when she had so much going for her that would allow her to make an honest living. ▇▇▇▇▇▇ interrupted me and said that she was going to sell to a guy in the buss tunnel, not Risch. I stated that I knew ▇▇▇▇ and that he was an admitted user and asked her to explain why an older white male transient would be hanging out with juveniles and why he was so intent on her rock cocaine? ▇▇▇▇▇▇ interrupted me again and asked me to let her tell her story. ▇▇▇▇▇▇ then went onto tell me that she had met a guy on the McDonald's corner who asked for 3 for $30.00. ▇▇▇▇▇▇ said that was what she had left so she agreed and went into the bus stop to get the dope and that the guy when into the bus tunnel. ▇▇▇▇▇▇ said that when I was first contacting her that the prospective buyer came out of the tunnel and saw us contacting her and immediately turned and when back into the tunnel.

▇▇▇▇▇▇ was transported to the West Precinct where I retrieved the one piece of rock cocaine that was still in the single cigarette holder and then weighed it with the first two pieces I recovered from ▇▇▇▇▇▇ left hand. The three pieces weighed at .5 grams. I field tested a sample from one of these three pieces and it tested positive for cocaine. I then placed these pieces into an SPD narcotics envelope and labeled it TJJB #1. Officer Jokela recovered $57.00 in US currency and I labeled the money envelope TJB #2. The incident occurred in SODA ZONE #1 and in a DRUG FREE ZONE located at 2nd Ave and Virginia St which is a school bus stop.

2

*34*

*Predisposition Diagnostic Report*

**Legal number**: 04-8-02781-2
**Offense**: Count I: Burglary 2  Count II: Theft 3
**Offense Date**: 8/7/04

On 3/11/05 the respondent was found guilty of entering and remaining (unlawfully) in Bon-Macy's located at 400 Bellevue Square and wrongfully obtaining property belonging to the Bon Macy's.

Loss prevention officer Skye D Hodges stated that he observed ▓▓▓▓ by CCTV. ▓▓▓▓ was in the juniors department selected a white Ecko brand skirt and two white Ecko brand Jackets at one time. ▓▓▓▓ was carrying a black back pack with her. Hodges radioed for the assistance of Loss Prevention Officers Mandy Konsack and Earl Edmonds. Nunnery proceeded to the fitting rooms at the children's department with the 3 items. ▓▓▓▓ entered the fitting room and later exited with only one Ecko brand jacket, and one skirt. Edmonds checked the fitting room and the missing Ecko jacket was not there. ▓▓▓▓ then hung the remaining items on a fixture in the Juniors department. ▓▓▓▓ then exited the store and made no attempt to pay for the Ecko brand jacket.
▓▓▓▓ was detained by Edmonds, and Konsack outside the store, ▓▓▓▓ admitted to Edmonds that the missing Ecko jacket was in her backpack. The jacket was recovered and ▓▓▓▓ was escorted to the loss prevention office.
Based on this information I arrested ▓▓▓▓ for the theft. As I searched ▓▓▓▓ I pulled her right pocket out of her skirt inside out. **As I pulled the pocket out a bus ticket fell out and a small bindle of a white crystal substance fell to the ground.** I retrieved the bindle for further observation. Based on my training and experience I believed the substance to be crack cocaine. **Nunnery was transported to the BPD booking facility, where the suspected cocaine was tested using a NIK kit. The test results came back positive for cocaine.** The suspected cocaine was sent to the Washington State Crime lab for further testing.

**Pending Charge(s)**:  NONE

## CRIMINAL HISTORY

### L.N. 04-8-04499-7 Theft 3 Offense Date: 9/4/04

Disposition (Alford Plea) on 3/8/04 ordered the respondent to 30 days of detention.
*(**legal number 04-8-02921-1 (Theft 3) dismissed per plea negotiations.)*

The offense involved the respondent wrongfully obtaining property belonging to Bartell Drugs (all items valued at $9.68)

### L.N. 04-8-02317-5 Ct I: Theft 2 Ct II: Obstructing Public Servant - Offense Date: 6/3/04

Disposition on 7/14/04 ordered the respondent to a total of 9 months supervision, 30 days detention.

Count I: The offense involved the respondent wrongfully obtaining property belonging to Nordstrom's that exceeded $250. (Item valued at $295.00)

Count II: The respondent did willfully hinder, delay, or obstruct a law enforcement officer, in the discharge of his official powers or duties.          •

3

35



**L.N. 04-8-00713-7 Theft 3 - Offense Date: 2/28/04**

Disposition on 7/14/04 ordered the respondent to 5 days of detention.

The respondent wrongfully obtaining property belonging to Niketown (all items valued at $70.00)

**L.N. 04-8-00273-9 Theft 3 - Offense Date: 11/28/03**

Disposition on 7/14/04 ordered the respondent to 3 months of supervision and 10 days of detention.

The respondent wrongfully obtaining property belonging to Nordstrom Rack (all items valued at $226.60)

**L.N. 03-8-04833-1 Theft 3 - Offense Date: 10/1/03**

Disposition on 1/12/04 ordered the respondent to 3 months of supervision 3 hours of community service, and 3 days of detention (served as Electric Home Monitoring).

The respondent wrongfully obtaining property belonging to Wal-Mart (all items valued at $200.48)

**L.N. 03-8-04670-3 Fare Evasion Offense date: 8/25/03**

Disposition on 1/12/04 ordered the respondent to 3 months of supervision, 3 hours of community service, and 3 days of detention (served as Electric Home Monitoring).

The respondent failed to present a valid unexpired pass, transfer, ticket or failed to pay the appropriate bus fare.

**L.N. 03-8-04477-8 Theft 3 - Offense date: 8/5/03**

Disposition 1/12/04 ordered the respondent to 3 months of community supervision, 3 hours of community service and 3 days of detention (served as Electric Home Monitoring).
The respondent wrongfully obtaining property belonging to Bartell Drugs (candy bar valued at $.59).

**L.N. 03-8-02743-1  Attempted Robbery 2 - Offense date: 6/3/03:**

Disposition (Alford Plea) on 8/22/03 ordered the respondent to 9 months community supervision, 36 hours of community service and 30 days of detention.

The respondent unlawfully and with intent to commit theft and by threatening to use immediate force of violence and fear of injury toward Jun Yi Chem.

*(\*\*legal number 03-8-03009-2 (Theft 3) and 03-8-02948-5 (Theft 3) were dismissed per plea negotiations.)*

**According to the police report:**

Victim Chen stated that he was just seated at the Metro bus stop waiting to get a ride home (from work) when he was approached by defendant Steele and defendant **Nunnery**. Victim stated that Steele walked right in front of him (while victim was still seated) with a fixed pocketknife clinched in his fist. Steele then said to victim "HOW MUCH DO YOU HAVE NIGGER!" Victim stated that he was in the process of trying

4

to explain that he had no money when a metro bus pulled up to the bus stop. Chen then immediately began walking towards the bus driver. **When doing this defendant Nunnery walked in front of Chen and shoved him then grabbing at victims radio headset (that he was wearing).** Victim Chen was able to make contact with the driver asking him to call for police. Both defendants had already departed scene.

## COMMUNITY SERVICES AND INTERVENTION *no meaningful services*

**Probation:** Since being on probation Jazqueena has been referred to ART, FFT, MST, Treatment Court, and Drug Court. She had a drug and alcohol evaluation and a psychological evaluation. However all of the services attempted have been unsuccessful.

Jazqueena has exhausted community supervision services with little success. Jazqueena was first referred to the Juvenile Department Intake Unit on 6/3/03 and assigned to JPC Diane Rayburn for an Attempted Robbery 2 referral. Since her involvement she has been assigned to 4 different juvenile probation counselors including Bill Boddick (assigned from 8/25/03 through 2/18/04, and Dede Gartrell (2/18/04 through 12/13/04). The family was assigned to Dede Gartrell as an attempt to develop a better working relationship with the family. Unfortunately Jazqueena continued to not cooperate with provided services and she continued to commit new offenses.

This JPC has been assigned to this JPC's caseload since 1/12/05. However, this JPC has not supervised Jazqueena in the community, as she has been in detention since 1/12/05 (date of VUCSA delivery) and returned on warrant status.

- On 9/3/03, JPC Bill Boddick referred Jazqueena to the ART program. Class was scheduled to begin on 10/13/03. JPC Boddick indicated in his 12/17/03 report to court:

  *"Jazzy is 14 years old and she resides with her mother, Alicia Nunnery in south Seattle. Jazzy was last in Court on 12/11/03 for a Modification Hearing. At that time community supervision was terminated due to the apparent difficulties the probation department encountered in trying to supervise this young woman. Both Ms Nunnery and Jazzy were unwilling to cooperate with services that were being offered. Jazzy was referred to the ART Program on 9/07/03, but she failed to attend any of the classes.*

- On 12/4/03, JPC Bill Boddick referred Jazqueena to the FFT program. JPC Boddick reported in his 12/13/04 modification report:

  *"Prior to supervision being terminated the family was referred to FFT (Functional Family Therapy). The counselor from Atlantic Street Center reports that the family has not responded to her calls. The family is still eligible for this resource regardless of whether Jazzy is on community supervision or not.*

5

**37**

- On 6/28/04, JPC Dede Gartrell made a referral for a psychological evaluation to be completed, per court order dated 6/28/04. Arrangements were made for Dr. Gerald Fleisher to complete the evaluation on 7/5/04 while ▬▬▬ was in detention. However, no test was administered because ▬▬▬ refused to cooperate. Dr. Fleisher indicated on his 7/5/04 psychological evaluation:

    *...From then on, she refused to answer any questions put to her. She did so by talking over the examiner, criticizing his intelligence, age, hair, attire, weight, and even some scratches on his arm. She made comments like, "Did your wife do that to you?" (Referring to the scratches). "Does she abuse you?" "Do you abuse her?" About his clothes, she stated "You're no fashion statement." "Your socks don't match your pants." "You really should do something about your teeth." "Where did you get that shirt?" etc.*
    *(See attached entire psychological evaluation dated 7/5/04)*

- On 9/1/04, Jazqueena was referred to observe the Treatment Court Program. MST (Multi-systemic Therapy) counselor David Knopes was assigned to Jazqueena's case and attempted to meet with the family to gather background information. Mr. Knopes indicated on his 10/19/04 Treatment Court Progress report:

    *Two messages were left that week on the Nunnery home phone. The third call made contact with a young female who would not identify herself. She (Jazqueena?) took a brief message and then hung up the phone. Letter of introduction sent on to the home the week of 9/13/04. No response. JPC invited MST to court to meet Ms. Nunnery on 9/23/04. Family was late and Jazqueena was held in secure detention. After court, MST had 2 hour conversation with Ms. Nunnery where she vented her considerable frustrations with the "injustice" done to her daughter. She then told MST that no counselor would be invited to their home because, "You people never do any good anyway."*

    ▬▬▬ chose not to opt into Treatment, as the 11/9/04 court order for legal number 04-8-02921-1 set the matter for trial. It appears that she was neither cooperative nor willing to actively participate in the of Treatment Court program.

- On 10/1/04, JPC Gartrell referred ▬▬▬ to complete a drug and alcohol evaluation United Indians completed the evaluation on 10/12/04 while she was in custody. It appears that while ▬▬▬ was interested in the Treatment Court program, she was also interested in the Drug Court program. She observed drug court on 10/28/04 and was found ineligible for the program (did not meet criteria). An email from Judge Laura Inveen (prior presiding Drug Court Judge) dated 10/28/04 states:

    *...Jazqueena and her mother appeared at court. She was called up in the first 15 minutes of the calendar. I explained that after input from the drug court team, I determined that she did not fit the eligibility criteria for drug court. Her mother was quite disgruntled that she had not been called this morning ...I am told by the court coordinator that they declined to accept the court order which reaffirmed the ineligibility for drug court.*

6

Although Jazqueena has only had 2 modification hearings for violating terms of probation, it does not project an accurate picture of her extensive involvement in the juvenile system. Since her initial disposition for Attempted Robbery 2 on 8/22/03 (ordering her to 9 months of supervision), she has been found guilty / or plead guilty to an additional **7 offenses** (1 felonies and 6 misdemeanors). Jazqueena has been ordered to a total of **172 days in detention settings** (Electric Home Monitoring / Secure) since her involvement in the juvenile system (since 6/3/03).

Jazqueena has an extensive history of failing to show for scheduled court hearings as well as warrants being issued by supervising JPC's for her whereabouts being unknown. There have been a total of 19 warrants issued for her arrest.

1. Warrant issued on 8/21/03 for failing to appear at detention review. A detention Review was set by JPC Diane Rayburn for Jazqueena's violation of conditions of release. Jazqueena was placed on EHM for15 days.

   > Detention review report dated 8/21/03, indicated:

   > *"Jazzy's mother, Alicia Nunnery, reported that Jazzy continues to come and go as she pleases without getting permission from her mother. Ms. Alicia Nunnery also stated that Jazzy took off over night recently and she filed a runaway report. Per Ms. Alicia Nunnery the police brought Jazzy back and she continues to break her curfew and go where she wants, when she wants."*

2. Warrant issued on 8/25/03 (3 days after disposition) for Jazqueena's whereabouts being unknown. Ms. Nunnery had contacted JPC Bill Boddick indicating that Jazqueena left home without permission and her whereabouts were unknown. As a sanction for violating probation, Jazqueena received 14 days of detention (referral to EHM).

3. Warrant issued on 10/1/03 as Jazqueena's whereabouts being unknown (per mother) since 9/20/03. Ms. Nunnery informed JPC Boddick that she did not know Jazqueena's whereabouts. Jazqueena quashed her warrant on 10/28/03.

   Unfortunately the modification was not heard until 12/4/03, as **Jazqueena failed to appear at 3 modification hearings that were scheduled for 10/31/04, 11/21/03, and 12/2/03.**

   *(She was released to her mother on each hearing date and did not return resulting in warrants).*

   JPC Bill Boddick's modification report dated 11/21/03, indicated:

   > *"I met with Jazzi and her mother, Alicia Nunnery on 9/03/03. We discussed probation conditions and **Jazzi was referred to the ART Program,** which began on 10/14/03. At this meeting Ms. Nunnery reported that Jazzi was going to be enrolled in school in Everett, as the family was planning to relocate there in the next month.*
   > *Since that appointment I have received numerous phone calls, as has my supervisor, in which Ms. Nunnery reported that Jazzi was gone from home. I spoke with Ms. Nunnery on 10/01/03. She reported that Jazzi had been gone from home since 9/20/03. She said that at one point Jazzi was picked up by police and was*

7

39

*transported to the CRC, but that she had left there after a day, and her current whereabouts were unknown. I issued a warrant/STC Modification on 10/01/03.*

The modification was finally addressed on 12/11/03 resulting in termination of supervision.

4.  A warrant was issued on 10/21/03 due to ▆▆▆▆▆ failure to appear at an arraignment for an Assault 4 (offense date 8/20/03, later dismissed per plea negotiations).

5.  Three warrants were issued on 12/3/04 due to ▆▆▆▆▆ failing to appear at case setting hearing for new offenses including **Fare Evasion** (offense date 10/1/03), **Theft 3** (offense date 8/5/03), and **Theft 3** (offense date 8/25/03).

    The 8/25/03 Theft 3 and the 10/1/03 Fare Evasion occurred while ▆▆▆▆▆ was on supervision.

6.  A warrant was issued on 4/22/04 a warrant was issued for ▆▆▆▆▆ for failing to appear at a 4/22/04 case setting hearing for a new Theft 3 that occurred on 11/28/03.

7.  Three warrants were issued on 5/21/04 due to ▆▆▆▆▆ failing to appear at case setting hearing for new offenses including **Theft 3 and False Statement** (offense date 2/28/04), **Theft 3** (offense date 11/28/03), and **Criminal Trespass 1** (offense date 3/16/04). All offenses occurred while Jazqueena was on supervision.

8.  A warrant was issued on 9/23/04 due to ▆▆▆▆▆ failure to appear (on time) at a fact finding hearing. Respondent showed up late and was remanded back to detention as a likely failure to appear at future hearings.

9.  A warrant was issued on 12/2/04 due to ▆▆▆▆▆'s failure to appear at an Arraignment hearing for a new Theft 3 offense (offense date 9/4/04).

10. A warrant was issued on 12/13/04 due to ▆▆▆▆▆ failure to appear at a Fact Finding Hearing.

11. A warrant was issued on 12/14/04 due to ▆▆▆▆▆ failure to appear at a Fact Finding Hearing.

**Parole:** The respondent has never received Parole Services.

**Therapeutic Intervention (Inpatient/Outpatient):** ▆▆▆▆▆ has been linked to several different services including ART, FFT, MST, Drug Court, and a psychological evaluation. ▆▆▆▆▆ continues to be non-compliant with the services that had been offered.

**Division of Children and Family Services:  N/A**

**Division of Developmental Disabilities:  N/A**

**Tribal Affiliation:**                    **N/A**

8

40

**Mentoring Affiliates:** While in detention, ▓▓▓▓ has been meeting with Mental Health Counselor Lisa Roth from Catholic Community Services. Ms. Roth has provided a letter to the court regarding her meetings with ▓▓▓▓ (see attached **letter dated 2/22/05**). On 2/8/05, this JPC spoke with Ms. Roth and she stated that she has met with Jazzy on 2-3 occasions while in custody. She stated that although ▓▓▓▓ can be witty and sweet, she can be very defensive and aggressive. She stated that ▓▓▓▓ and her mother appear to blame everyone for ▓▓▓▓ court involvement and appears to take minimal responsibility. She reported that mother has a skewed view of life that ▓▓▓▓ now portrays.

## DETENTION BEHAVIOR/ADJUSTMENT

▓▓▓▓ has been in detention numerous times since her involvement in the juvenile system, dating back from 6/6/03. Although she has shown signs of success during school hours, reports from detention staff indicate consistent behavioral issues that occurred on almost every detention stay. This JPC received the Behavioral Tracking Form from detention and notes from staff indicate that although Jazqueena is not being placed on Program modifications, her behavior is a concern *(see attached Behavioral Tracking Form).*

- On 3/15/05, Jazqueena received an 8 hour program modification. Detention staff reports that *"Jazqueena continued with her mean and hateful comments."* She stated to another youth ▓▓▓▓ *that's why your baby died in your dorm the last time you were here."*

- On 3/14/05, Swing shift staff report, *"Jazzy has returned to her usual self. Telling other youth what to do in unit, rolling eyes and thinking she runs everything & everyone."*

- On 3/11/05, ▓▓▓▓ was named **Student of the week** for her attitude and achievement.

- On 3/7/05 detention staff reports that, *"▓▓▓▓ refused to program today-and will not program when I am working the unit as she stated. She refused to eat her dinner, but had 2 snacks. Today she bumped into a youth while she was getting her snack and instead of apologizing she pushed her shoulder forward and continued to walk into her room. Due to this incident, ▓▓▓▓ did not maintain her points and was demoted to a level 2."*

- On 3/3/05, ▓▓▓▓ was named **Student of the week** for her attitude and achievement.

- On 2/17/05, ▓▓▓▓ was named **Student of the week** for her attitude and achievement.

- On 2/14/05, detention swing shift staff report, *"▓▓▓▓ thinks she is Jr. staff-points taken."*

- On 2/11/05 and 2/5/05, ▓▓▓▓ received Kudos **for a job well done** from her Reading teacher indicated that *"she was an excellent and hard working student this week."*

- On 10/18/04 Jazqueena received Kudos **for a job well done** from her Reading teacher. He indicated that she *"finished all of her work in school with excellent results."*

- On 9/30/04 ▬▬▬▬ received an 8 hour program modification for *"not following directives. Youth was standing on her sink talking through the vent."*

- On 9/29/04 ▬▬▬▬ received a 16 hour program modification for *"using racially intimidating slurs against another youth."*

- On 7/5/04 ▬▬▬▬ received a 24 hour program modification. Detention staff reported that *"▬▬▬▬ was very disrespectful to Dr. Gerald Fleisher, Psychologist. She cursed him out and her behavior was inappropriate that he ended the evaluation in the visiting area."*

- On 7/3/04 at 8 am, ▬▬▬▬ received an 8 hour program modification. Detention staff indicated that *"while at breakfast, ▬▬▬▬ was swearing and threatening to stab swing shift staff".*

- On 7/3/04 at 5:10 pm ▬▬▬▬ received an 8 hour program modification. Detention staff reported that *"during a Code 1, she refused to go to her dorm."*

- On 7/2/04 ▬▬▬▬ received Kudos **for a job well done** from her Math teacher. He indicated that she *showed improvement in her attitude and school.*

- On 6/22/04 ▬▬▬▬ received an 8 hour program modification. Detention staff reported *"that she continuously talked and laughed in school. In line she was slow to respond, disrespectful, and bulling."*

- On 6/16/04 ▬▬▬▬ received an 8 hour program modification. Detention staff reported *"▬▬▬▬ attitude started at Post 1 for Court pick up. She was more interested in school / gym instead of court and complained about going to court and her time in court area and continued to become belligerent and nasty with staff. I also told her not to push elevator button and she pushed the button anyways."*

- On 6/11/04 ▬▬▬▬ received an 8 hour program modification. Detention staff reported that *"during a Code 1, she refused to go to her dorm."*

- On 6/3/04 ▬▬▬▬ received an 8 hour program modification. Detention staff reported that she *"refused to cooperate in completing the fingerprinting process"*, which is required at Intake.

- On 3/1/04 ▬▬▬▬ received a 72 hour program modification. Detention staff reported *"Youth was sent back from school for gang signing & then threatened to beat me up (staff) after calling me a "stupid white bitch."*

**Family Involvement and Visitation:** Ms. Nunnery visits her daughter on a regular basis. This JPC has granted Jazqueena additional visits from Catholic Community Services counselor Lisa Roth, Snohomish County Team Child Attorney Karen Piller, and former NAACP representative Joe Green. Ms. Nunnery had requested Ms. Roth, Mr. Green, and Ms. Piller receive visitation privileges as additional support for Jazqueena.

42

Predisposition Diagnostic Report

## FAMILY HISTORY

Until the 3/23/05 interview with Ms. Nunnery, this JPC and previous JPC's Rayburn, Boddick, and Gartrell had minimal success in gathering personal information from Jazqueena and her mother.

**Biological Family structure:** Ms. Nunnery indicates that Jazqueena was born in Seattle, Washington and the family has always resided in the Seattle area. Jazqueena lives with her mother and younger brother (has different father than Jazqueena). Ms. Nunnery indicated that Jazqueena also has a 23 year old sister (married) that resides in Mukilteo, Washington. She indicates that Jazqueena has a close relationship with her siblings and believes that they support Jazqueena. Mother also indicates that Jazqueena has a (maternal) uncle that provides guidance for Jazqueena.

Minimal information was provided regarding Jazqueena's biological father. Ms. Nunnery's only comment was that he is not involved in Jazqueena's life.

Ms. Nunnery indicates that she has been unemployed for the past few years. She states that she is in the education field but is having difficulty with securing her teachers license.

The interview with Ms. Nunnery went well however it was obvious that she is very calculating and guarded when disclosing personal information.

**Youth's Developmental History:** Ms. Nunnery reports no prenatal complications with Jazqueena. She reports no drug or alcohol use. She indicates that Jazqueena has no major medical issues (except dental).

**Family Systems Issues:** Ms. Nunnery reports that there is no family history of drug use that would impact Jazqueena's behavior. Mother reports the family had experienced stress due to their involvement in the Family Court system. According to Ms. Nunnery, her son's biological father wanted to have parental rights (including custody) after never having a relationship with him. Mom indicates that Jazqueena's opinion of the Court system became negative due to their lengthy involvement and uncertainty of having her brother live with someone else.

**Parent's View of Youth's Criminal Activity:** Ms. Nunnery appears to disapprove of Jazqueena's extensive involvement in the juvenile system. She states that Jazqueena needs to take personal responsibility for her past behavior and do what is right. Mother also admits that Jazqueena needs drug and alcohol treatment as Jazqueena has admitted to use.

Ms. Nunnery (and family) is willing to support Jazqueena regardless of the outcome of the disposition hearing. She reports that she is encouraging Jazqueena to cooperate with probation (if Manifest Injustice Downward is granted).

Ms. Nunnery reports she is willing provide the necessary guidance and advocacy while at JRA and upon her release (if sentenced).

11

43

Although Ms. Nunnery indicates that Jazqueena needs to take responsibility for her actions, she indicates that the Court / Probation have not provided appropriate interventions for her daughter and are not advocates for her daughter. She indicates that if services were provided in the beginning (6/03), Jazqueena would not be in this situation.

JPC Bill Boddick's 12/17/03 dispositional report provides information regarding Ms. Nunnery's view of probation services and her daughter's behavior:

> *"While Ms. Nunnery appears to be a very concerned parent, she would vacillate between wanting services for her daughter, and then changing her mind insisting that everything was going fine. Both Ms. Nunnery and her daughter tend to externalize their problems, blaming the Court, Probation Department, and attorneys for their difficulties, rather than taking any responsibility for their own issues that might need to be addressed. I am however concerned about Jazzy as she has committed a number of offenses during the last several months. I am recommending that the Court impose detention time for these matters. If there are any more offenses that occur we can at that time explore different options."*

Although Jazqueena has been on this JPC's caseload for a short period, Ms. Nunnery continues to express the same opinions of the court system that JPC Boddick encountered. It appears that once she does not get the answer or outcome she wants, she becomes confrontational and unwilling to cooperate.

***For example***: On 2/11/05 (Friday), Ms. Nunnery contacted this JPC requesting a pass from detention stating that Jazqueena had a dental appointment set for 2/12/05 (Saturday) at Odessa Brown. This JPC stated that verification would be needed and contact with Odessa Brown would be made to ensure an appointment was scheduled. This JPC contacted Odessa Brown, but the business message indicated they were closed on 2/11/05 and there was no indication that the facility was open on 2/12/05. I contacted the mother and informed her that the they were closed on 2/11/05 and did not indicate they were open for business on 2/12/05. Before I could say anything further, the mother became upset and told me I was wrong and that I needed to call them back. She then proceeded to hang up on me.

Due to the inability to verify appointments, this JPC and City Unit Supervisor Tony Peguero agreed that detention would transport Jazqueena to any future dental appointments due to the difficulty in receiving confirmation of appointments. Mother was informed that no further passes would be issued. Since that time she seems to be unwilling to converse with this JPC without becoming verbally aggressive and blaming the court system for her daughter's incarceration.

## MEDICAL

**Medical Insurance/Community Physician(s):** Unknown

**Allergies:**                    Unknown

| | |
|---|---|
| **Significant Medical Issues:** | Unknown |
| **Dental:** | In need of ongoing dental care |
| **Optical:** | Unknown |
| **Medication:** | None, past pain relief medication for dental in 2/05 |
| **Psychotropic Medication:** | Unknown |

**Physical or Mental Disability Requiring Accommodation:**    Unknown

## MENTAL HEALTH

A psychological assessment was made for Jazqueena by her prior JPC DeDe Gartrell, per court order dated 6/28/04. Arrangements were made for Dr. Gerald Fleisher to complete the evaluation for 7/5/04 while Jazqueena was in detention. However, no test was administered because Jazqueena refused to cooperate and was very disrespectful and belligerent with Dr. Fleisher. Although no test was administered, Dr. Fleisher did provide the court with his account and interaction with Jazqueena during the time that had been scheduled for the evaluation.

> *"While the examiner could not formally test her cognitive skills or academic attainments, she is clearly bright and articulate. It is not clear to what extent her family situation contributes to her pathology, but one can speculate that however she was treated when she was younger (whether abused, parentified, neglected, or perhaps pampered and put on a pedestal and worshipped as the golden child, **one can be certain that her family can no longer control her nor, in view of her current history of offense, can any community-based residence.**"*

> *(See attached psychological evaluation dated 7/5/04)*

## CHEMICAL USE/ABUSE/DEPENDENCY

Information is provided by Catherine Lehmann's drug and alcohol evaluation completed on 10/12/04 while Jazqueena was in custody *(see attached report dated 10/12/04)*.

Jazqueena's drug use is undocumented due to her not wanting to submit to urinalysis testing. There are no records of any urinalysis test results for Jazqueena. This JPC attempted to have her submit to a urinalysis test on 1/13/05, but she stated *"I don't have to go to the bathroom and don't know when I will...I am not refusing to take a UA, I just don't have to go."*

The only information regarding Jazqueena's involvement with drugs is self-reported use of marijuana (documented in the 10/12/04 evaluation) and the 1/12/05 VUCSA with intent to deliver offense (05-8-00223-1). Although Jazqueena was not charged with a VUCSA (possession of cocaine) for the Burglary 2 offense (04-8-02781-2), the police did find crack cocaine on her when arrested for the Burglary 2 offense. Both offenses she is facing commitment.

On 3/16/05, this JPC also attempted to administer the PESQ test while Jazqueena was in detention. However she refused to meet and talk with this JPC.

This JPC does not believe that drug and alcohol treatment in a community based service is appropriate. Jazqueena has failed to follow treatment recommendations from the 10/12/04 and was not accepted into the Drug Court Program because she "did not meet criteria" and has not been cooperative with other services offered in the community.

## EDUCATION HISTORY

**Most Recent School:** Although the family resides in the Seattle area, Ms. Nunnery enrolled Jazqueena in the Mukilteo School District in 2003. She states that while in Mukilteo, Jazqueena has had difficulty with a teacher treating her unfairly. Ms. Nunnery admits that while in school Jazqueena had been suspended for behavioral issues.

Ms. Nunnery believes that the Mukilteo School District is partially to blame for Jazqueena's lack of success. She reports that if the school would have been more supportive of Jazqueena it would have encouraged her to attend and succeed academically. Jazqueena appears to be very intelligent and fully capable of doing well academically, but needs to abstain from being confrontational and oppositional to others.

This JPC spoke with the Kamiak High School Registrar and she indicates that attendance has been an area of concern. The school registrar indicates that Jazqueena was enrolled at Kamiak for the 2004-2005 school year and was scheduled to start on 9/3/04, but never attended. The school reports that Ms. Nunnery stated that she was going to enroll Jazqueena in school but never provided any documentation of her enrollment in any educational program.

Previous JPC Bill Boddick also had difficulty in receiving educational information. His modification report dated 11/21/03, indicated:

> *"Jazzy called me once since her last Court date, but she refuses to talk on the phone, and if I ask her how she is doing or if she is enrolled in school, she would simply reply "why do you want to know."*

**WIAT scores:** Unknown

**Special Education:** Unknown

The school Information Request has been sent to Kamiak High School (Mukilteo School District) on March 24, 2005.

## OCCUPATIONAL HISTORY: N/A

## TREATMENT NEEDS

Drug / Alcohol Treatment
Mental Health / Medication
Individual Counseling and Group Counseling
Victim Awareness / Victim Empathy
Educational program
Vocational Skills / Training

## COURT RECOMMENDATIONS

Probation does not support a CDDA. Jazqueena has had numerous opportunities to work with probation and services that have been offered while being supervised "in the community". However, she has not taken advantage of the services offered.

It is probations opinion that Jazqueena's interest in receiving a CDDA may be a manipulative attempt to stay out of JRA and not a genuine attempt to make changes. She refuses to work with the assigned Juvenile Probation Counselor and it does not appear that granting a CDDA will change her willingness to cooperate with services.

It is the recommendation of Probation that Jazqueena receive the Standard Range that is outlined for both committable offenses. Jazqueena is in need of drug and alcohol treatment, individual counseling, and educational services. All of which she can receive in a JRA facility.

It is also recommended that supervision for legal numbers 04-8-02317-5 (expires 4/14/05) and 04-8-00273-9 (expires 7/14/05) be terminated.

_Michelle Higa_  3/24/05
**Probation Counselor/Date**

_Tony Pegeuer_  3/24/05
**Reviewed/By/Date**

_206-205-9495_
**Phone**

15

47

COURT 3

> **CONFIDENTIAL**

## DISPOSITIONAL REPORT TO COURT

**NAME:** Jazqueena Nunnery      **JCN:** 201167

**DOB/AGE:** 11/5/89 – 15.4      **L.N.:** 05-8-00223-1 / 04-8-02781-2

**DATE/TIME OF HEARING:** March 25, 2005 @ 8:30 AM

**TYPE OF HEARING:** Disposition Hearing

### PRESENT IN COURT:

Youth: ▰▰▰▰▰▰▰
Parent: ▰▰▰▰▰▰▰
Attorney:     Seth Connant
Probation Counselor: Michelle Higa
DPA:     Tom Breen
Other:

### STANDARD RANGE:

L.N./OFFENSE DATE: 05-8-00223-1 / 1-12-05

| COUNT | OFFENSE NAME | COMMUNITY SUPERVISION | COMMUNITY SERVICE | FINE | DETENTION | INSTITUTION |
|-------|--------------|-----------------------|-------------------|------|-----------|-------------|
| I | VUCSA/ Narcotic Delivery | | | | 80-100 weeks | |

L.N./OFFENSE DATE: 04-8-02781-2 / 8-7-04

| COUNT | OFFENSE NAME | COMMUNITY SUPERVISION | COMMUNITY SERVICE | FINE | DETENTION | INSTITUTION |
|-------|--------------|-----------------------|-------------------|------|-----------|-------------|
| I | THEFT 3 | | | | LOCAL SANCTIONS | |
| II | BURGLARY 2 | | | | 15-36 weeks | |

### PROBATION COUNSELOR RECOMMENDATION:

L.N./OFFENSE DATE: 05-8-00223-1 / 1-12-05

| COUNT | OFFENSE NAME | COMMUNITY SUPERVISION | COMMUNITY SERVICE | FINE | DETENTION | INSTITUTION |
|-------|--------------|-----------------------|-------------------|------|-----------|-------------|
| I | VUCSA/ Narcotic Delivery | | | | 80-100 weeks | |

L.N./OFFENSE DATE: **04-8-02781-2 / 8-7-04**

|        |          | OFFENSE | COMMUNITY | COMMUNITY |      |           |             |
| ------ | -------- | ------- | --------- | --------- | ---- | --------- | ----------- |
| COUNT  | NAME     | SUPERVISION | SERVICE | FINE | DETENTION | INSTITUTION |
| I      | THEFT 3  |         |           |           |      | no sanctions |          |
| II     | BURGLARY 2 |       |           |           |      | 15-36 weeks |           |

For legal number 05-8-00223-1, the respondent has served **75 days** in detention. Credit for time served is requested.

For legal number 04-8-02781-2, the respondent has served **1 day** in detention. Credit for time served is requested.

## MITIGATING AND AGGRAVATING FACTORS:

### Mitigating Factors:

■ The respondent's conduct neither caused nor threatened serious bodily injury or the respondent did not contemplate that his/her conduct would cause or threaten serious bodily injury.

### Aggravating Factors:

■ In the commission of the offense, or in flight therefrom, the respondent inflicted or attempted to inflict serious bodily injury to another.

■ The victim or victims were particularly vulnerable.

■ The respondent has a recent criminal history or has failed to comply with conditions of a recent Dispositional Order or Diversion Agreement.

17

49