UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

i.N. (11/05/89), a minor,                     )     CASE NO.: C07-0467-RSM-MAT
                                              )
          Petitioner,                         )
                                              )
     v.                                       )     REPORT AND RECOMMENDATION
                                              )
NEHEMIAH MEAD,                                )
                                              )
          Respondent.                         )
_____      )

INTRODUCTION

In 2005, petitioner i.N.[1] was found by a juvenile court to have violated Washington law prohibiting the possession of cocaine with intent to deliver.  She was committed to the Juvenile Rehabilitation Administration for a period of confinement of 80-100 weeks, and is now on parole.[2] Through counsel, petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner's sole claim is that she was committed to a greater period of custody than her offense permitted.  Having reviewed the parties' submissions, the Court concludes that petitioner

_____

[1] Petitioner is referred to in some state court proceedings as "J.N." or by her full name.

[2] According to respondent, petitioner's parole is scheduled to end on January 4, 2008. (Dkt. No. 14 at 2, n.2).

REPORT AND RECOMMENDATION
PAGE -1

01   is not entitled to habeas relief and the petition should be denied.

02                                    BACKGROUND

03           On appeal, the Washington Court of Appeals summarized the facts of petitioner's case as

04   follows:

05           At approximately 11:30 a.m. on January 12, 2005, while on bicycle patrol in
      downtown Seattle, Officer Burns noticed J.N. standing near a known drug user at a
06    bus shelter.  According to Officer Burns, the drug user was "obviously very intent"
      on J.N. and what she was doing.  J.N. had her head down and was shaking items out
07    of a small, round, single-cigarette tube into her hand. Officer Burns saw J.N. shake
      two white items into her hand. Based on his training and experience, Officer Burns
08    believed the white items were rock cocaine.  As Officer Burns rode toward J.N., she
      quickly put the tube in her hand and clenched her fist.  Officer Burns grabbed J.N.'s
09    wrist and asked her to open her hand. J.N. complied, revealing two pieces of rock
      cocaine.  Another piece of rock cocaine was still in the cigarette tube.  Two of the
10    three rocks of cocaine were individually wrapped.  Officer Burns placed J.N. under
      arrest and informed her of her *Miranda* rights.

11
           When Officer Burns told J.N. he was disappointed to see her selling drugs to
12    the drug user, J.N. interrupted him.  J.N. said she was not selling the cocaine to the
      drug user, but to another person who had agreed to buy three rocks for $30.  She said
13    that person was waiting for her by the entrance to the bus tunnel, but left when the
      police showed up.

14
           The officers searched J.N.  She was not carrying any drug paraphernalia but
15    had $57.  Seven single dollar bills were in her wallet, two twenty-dollar bills and two
      five-dollar bills were crumpled up in different pockets of her jacket.

16
           J.N. was charged in juvenile court with possession of cocaine with intent to
17    deliver.  Following a CrR 3.5 hearing, the court ruled that J.N.'s conduct of opening
      her hand before being advised of her *Miranda* rights was "testimonial"and
18    inadmissible, but J.N.'s statements to Officer Burns after *Miranda* rights were given,
      were admissible.  J.N.'s lawyer did not challenge admission of J.N.'s confession under
19    the *corpus delicti* rule.

20           At the fact-finding hearing, J.N. denied she was selling drugs and denied
      making any statements to Officer Burns.  J.N. testified that an acquaintance handed
21    her the rocks of cocaine to hold and told her he would be back.  J.N.'s mother testified
      that she gave J.N. a $50-dollar bill that morning. J.N. was supposed to break the $50,
22    keep $10 for herself and give the remaining $40 to her sister to pay a bill.

REPORT AND RECOMMENDATION
PAGE -2

01          The court rejected J.N.'s version of what occurred and found her guilty of
02     possession of cocaine with intent to deliver.  At the disposition hearing, J.N. asked the
       court to impose a Chemical Dependency Disposition Alternative (CDDA) as a
       manifest injustice disposition below the standard range.  The court concluded a
03     CDDA was not appropriate and imposed a standard range disposition. J.N. appeals.

04  (Dkt. No. 16, Ex. 3 at 1-2).

05          The Washington Court of Appeals affirmed petitioner's adjudication and disposition in an

06  unpublished opinion.  (Dkt. No. 16, Ex. 3).  Petitioner filed *pro se* "Notice of Appeal" appealing

07  the court of appeals' decision to the Washington Supreme Court.  (*Id.*, Ex. 4).  On July 7, 2006,

08  petitioner filed a motion for an extension of time to file a brief in the Washington Supreme Court.

09  (*Id.*, Ex. 6).  On August 1, 2006, the Clerk of the Washington Supreme Court sent petitioner a

10  letter construing her motion as a motion for an extension of time to file a petition for review. (*Id.*,

11  Ex. 8).  The Clerk granted petitioner until August 31, 2006 to file the petition.  (*Id.*)

12          Petitioner did not meet the August 31st deadline but the Washington Supreme Court,

13  acting *sua sponte*, granted her another extension until October 31, 2006, to file a petition for

14  discretionary review.  (*Id.*, Ex. 10).  Petitioner submitted a petition for review on that date, but

15  it was not filed by the Washington Supreme Court until November 1, 2006.  ( *Id.*, Ex. 12).  In

16  addition, petitioner did not put a case number on her petition for review and it was apparently filed

17  in another of petitioner's cases that was pending at the time.[3]  The Washington Supreme Court

18  then dismissed petitioner's appeal as "abandoned" on November 9, 2006.  (*Id.*, Ex. 13).

19

20          [3] At the same time she was adjudicated for possession of cocaine with intent to deliver,
    petitioner was also adjudicated for burglary and theft.  (Dkt. #14 at 3, n.3).  She appealed both
21  adjudications to the Washington Court of Appeals; the burglary case was assigned Case No.
    55964-8-I and the drug case was assigned Case No. 55965-6-I.  Both adjudications were affirmed
22  on the same day by the court of appeals, May 1, 2006, although the cases were never consolidated.

REPORT AND RECOMMENDATION
PAGE -3

01          While petitioner's direct appeal was pending, petitioner's mother filed a "petition for writ

02  of habeas corpus" in state court. (*Id.*, Ex. 15). The Washington Court of Appeals construed the

03  petition as a personal restraint petition and dismissed it on August 10, 2006. (*Id.*, Ex. 19).

04  Petitioner did not seek discretionary review in the Washington Supreme Court of the dismissal.

05  The Washington Court of Appeals issued its Certificate of Finality on September 26, 2006. (*Id.*,

06  Ex. 20).

07          Petitioner submitted the instant petition for a writ of habeas corpus, along with an

08  application for leave to proceed *in forma pauperis*, on April 12, 2007. (Dkt. No. 1). On May 21,

09  2007, the Court granted petitioner's motion for appointment of counsel and the Federal Public

10  Defender was appointed to represent petitioner. (Dkt. No. 6). Newly-appointed counsel for

11  petitioner filed an amended petition on July 11, 2007. (Dkt. No. 7). After receiving an extension

12  of time, respondent filed his answer, along with the state court record, on October 18, 2007.

13  (Dkt. Nos. 14, 16). Petitioner filed a late response to the answer which was stricken as untimely

14  (Dkt. No. 19), and the matter is now ready for review.

15  GROUND FOR RELIEF

16          Petitioner's amended habeas petition sets forth the following sole ground for relief:

17          1. I.N.'s Fourteenth Amendment right to due process of law was violated when the
    juvenile court imposed a sentence of 80-100 weeks.

18

19  (Dkt. No. 7 at 3).

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION
PAGE -4

01 <u>DISCUSSION</u>

02     A.  <u>Standard of Review under Habeas Statute</u>

03       The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs because petitioner

04 filed her habeas petition after April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997);

05 *Barajas v. Wise*, 481 F.3d 734, 738 (9th Cir. 2007).  Under AEDPA, petitioner may obtain relief

06 only in one of two circumstances:  First, she may obtain relief if the state court's denial of her

07 claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

08 clearly established Federal law, as determined by the Supreme Court of the United States."  28

09 U.S.C. § 2254(d)(1).  "Clearly established Federal law" refers to the holdings, as opposed to the

10 dicta, of the Supreme Court's decisions.  *See Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653

11 (2006).  A state-court decision is "contrary to" clearly established Supreme Court precedent if the

12 decision "contradicts the governing law set forth in [the Supreme Court's] cases."  *Williams v.*

13 *Taylor*, 529 U.S. 362, 405 (2000).  A state-court decision is an "unreasonable application" of

14 federal law "if the state court identifies the correct governing legal rule from this Court's cases but

15 unreasonably applies it to the facts of the particular state prisoner's case."  *Id.* at 407.

16       Second, petitioner may obtain relief if the state court's decision was "based on an

17 unreasonable determination of the facts in light of the evidence presented in the State court

18 proceeding." 28 U.S.C. § 2254(d)(2).  Federal courts must presume the correctness of the state

19 court's factual findings, but petitioner may rebut the presumption by clear and convincing

20 evidence.  28 U.S.C. § 2254(e)(1).  Finally, a federal court sitting in habeas jurisdiction must be

21 convinced that the state court's decision is "more than incorrect or erroneous."  *Lockyer v.*

22 *Andrade*, 538 U.S. 63, 75 (2003).  The state court's decision must be "objectively unreasonable."

REPORT AND RECOMMENDATION
PAGE -5

01  *Id.*

02      B.  Petitioner's Ground for Relief

03      1.  Exhaustion

04          At the outset, respondent argues that petitioner's claim is barred from consideration here

05  because she failed to exhaust the claim in state court.  In order to present a claim to a federal court

06  for review in a habeas corpus petition, a petitioner must first have presented that claim to the state

07  court.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement has long been recognized as "one

08  of the pillars of federal habeas corpus jurisprudence."  *Calderon v. United States Dist. Ct.*

09  *(Taylor)*, 134 F.3d 981, 984 (9th Cir.) (citations omitted), *cert. denied*, 525 U.S. 920 (1998).

10  Underlying the exhaustion requirement is the principle that, as a matter of comity, state courts

11  must be afforded "the first opportunity to remedy a constitutional violation."  *Sweet v. Cupp*, 640

12  F.2d 233, 236 (9th Cir. 1981).

13          In addition, a petitioner must not only present the state court with the *first* opportunity to

14  remedy a constitutional violation, but a petitioner must also afford the state courts a        *fair*

15  opportunity.  *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982).

16  It is not enough that all the facts necessary to support the federal claim were before the state

17  courts or that a somewhat similar state law claim was made.  *Harless*, 459 U.S. at 6.  "[A] claim

18  for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as

19  well as a statement of the facts that entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S.

20  152, 162-63 (1996).

21          Finally, a petitioner must raise in the state court all claims that can be raised there, even

22  if the state court's review of such claims is purely discretionary.  *See O'Sullivan v. Boerkel*, 526

REPORT AND RECOMMENDATION
PAGE -6

01  U.S. 838, 841-47 (1999).  In other words, a petitioner must invoke one complete round of a

02  state's established appellate review process, including discretionary review in a state court of last

03  resort, before presenting their claims to a federal court in a habeas petition.  *Id.* at 842-44.  Thus,

04  in Washington state, a petitioner must seek discretionary review of a claim by the Washington

05  Supreme Court in order to properly exhaust the claim and later present it in federal court for

06  habeas review.

07          Here, respondent asserts in his answer that petitioner failed to exhaust the instant claims

08  by failing to petition the Washington Supreme Court for discretionary review after her direct

09  appeal and her personal restraint petition were dismissed.  (Dkt. No. 14 at 4-5).  Petitioner,

10  because she has not filed a response to the answer, has failed to present any argument to the

11  contrary.  The only evidence in the record of an attempt by petitioner to seek review by the

12  Washington Supreme Court is the untimely petition for discretionary review that was filed on

13  November 1, 2006. [4]  (Dkt. No. 17, Ex. 12).  Accordingly, the Court concludes that petitioner

14  failed to exhaust her claim in state court.

15          In addition, because more than one year has passed since her adjudication became final,

16  petitioner is now procedurally barred from raising this claim in state court.  When, as here, a

17  petitioner has procedurally defaulted on a claim in state court, the petitioner "may excuse the

18  default and obtain federal review of his constitutional claims only by showing cause and prejudice,

19  _____

20          [4] Although this petition for review bears a stamp by the Washington Supreme Court's
    Clerk's Office that says "Received October 31, 2006 3:42 p.m.," the petition was apparently

21  considered untimely by the state court, as the court dismissed her case as "abandoned." (Dkt. No.
    16, Ex. 13).  The finding of untimeliness is a factual finding by the state court that is presumed
    correct unless rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Petitioner

22  has failed to argue, much less show, that the state court finding is incorrect.

01  or by demonstrating that the failure to consider the claims will result in a 'fundamental miscarriage

02  of justice.'"  *See Noltie v. Peterson,*    9 F.3d 802, 806 (9th Cir. 1993) (citing        *Coleman v.*

03  *Thompson,* 501 U.S. 722 (1991)).  Petitioner has failed to show that "cause and prejudice" exist

04  excusing her default on the unexhausted claim.  Nor has she shown that failure to consider the

05  claims will result in a miscarriage of justice. Accordingly, petitioner's ground for relief is barred

06  from federal habeas review and should be denied.

07          2. <u>Merits</u>

08          Even if a habeas claim is deemed not to have been exhausted, a federal court may deny the

09  claim based upon the merits.  *See* 28 U.S.C. § 2254(b)(2).  Accordingly, as an alternative to the

10  above analysis, the Court will examine the merits of petitioner's claim.  For the reasons set forth

11  below, the Court concludes that the claim lacks merit.

12          Petitioner argues that she was sentenced for a crime that she did not commit.  She

13  contends that while she was found guilty of having possessed cocaine with intent to deliver, she

14  was sentenced for the sale of cocaine.  This discrepancy arose, according to petitioner, because

15  the sentencing judge misapplied the sentencing statute that governs juvenile offenses, RCW

16  13.40.0357.  This statute lists offenses and gives a corresponding level of severity for each offense,

17  from "A" to "E."  For example, "Arson" is designated as an "A" level offense, the most serious,

18  while "Tampering with a Fire Alarm," is designated as an "E" level offense, the least serious.  *See*

19  RCW 13.40.0357.  The sentencing statute lists petitioner's offense as "Violation of Uniform

20  Controlled Substances Act – Narcotic, Methamphetamine, or Flunitrazepam        *Sale*   (RCW

21  69.50.401(2)(a) or (b))," RCW 13.40.0357 (emphasis added), and assigns it a B+ level of severity.

22          Petitioner argues that her crime – possession with intent to deliver – is not covered by the

REPORT AND RECOMMENDATION
PAGE -8

01 sentencing statute because the statute uses only the term "sale," and instead her offense should

02 have been categorized based upon the equivalent adult offense. (Dkt. No. 7, Memorandum at 1-2,

03 *citing* RCW 13.40.0357). The adult equivalent of petitioner's offense, she maintains, would have

04 been a class B felony. Therefore, her offense should have been categorized as a "B" level offense

05 instead of a "B+" offense, and accordingly, instead of 80-100 weeks of confinement, petitioner

06 contends that she should have been eligible for only 15-36 weeks. (Dkt. No. 7, Memorandum at

07 2).

08       Because petitioner failed to present this claim to the state court, there is no state court

09 decision to review under the deferential standard set forth in AEDPA. When a state court has not

10 reached an issue, a habeas court's review is "*de novo*." *See Nooner v. Norris*, 402 F.3d 801, 810

11 (8th Cir. 2005), *citing Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

12       Here, even under a *de novo* standard of review, petitioner's argument is not persuasive.

13 First, the argument is unsupported by any legal authority. Second, a more plausible reading of the

14 sentencing statute is, as respondent suggests, that the use of the word "sale" in the statute is not

15 meant to exclude other prohibited acts such as possession with intent to deliver, but instead was

16 used as a shorthand term to encompass *all* the acts prohibited by the underlying criminal statute.

17 Two factors support this interpretation of the statute: (1) The statute correctly refers to the

18 precise citation for petitioner's underlying offense, RCW 69.50.401(1)(2)(a), and this is solid

19 evidence that the Legislature intended to cover all the acts prohibited by the underlying statute;

20 and (2) the word "sale" is nowhere used in the underlying criminal statute, which states that "it

21 is unlawful for any person to *manufacture, deliver, or possess* with intent to manufacture or

22 deliver, a controlled substance." RCW 69.50.401(1)(2)(a) (emphasis added). Therefore, if

REPORT AND RECOMMENDATION
PAGE -9

01  petitioner's narrow reading of the sentencing statute were correct, then *none* of the prohibited acts

02  listed in the underlying statute would be covered by the sentencing statute because the words

03  "manufacture, deliver, or possess" do not appear in the sentencing statute.  Such a reading would

04  render that part of the sentencing statute a nullity.  The Court is constrained to avoid interpreting

05  a statute in a manner that renders it useless.  *See Boise Cascade Corp. v. EPA*, 942 F.2d 1427,

06  1432 (9th Cir.1991) ("Under accepted canons of statutory interpretation, we must interpret

07  statutes as a whole, giving effect to each word and making every effort not to interpret a provision

08  in a manner that renders other provisions of the same statute inconsistent, meaningless or

09  superfluous.").

10        In sum, even if the Court were to consider the merits of petitioner's claim, the claim should

11  be denied.

12                                   <u>CONCLUSION</u>

13        For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be

14  denied.  A proposed Order accompanies this Report and Recommendation.

15        DATED this <u>9th</u> day of November, 2007.

16

17                              _____
                              Mary Alice Theiler
18                              United States Magistrate Judge

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -10